UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

WILLIAM H. SIMMONS,

**09-23806**

Plaintiff,

**CIV-LENARD**

vs.

Case No.: _____

AMERICA'S SERVICING COMPANY
a division of **WELLS FARGO HOME
MORTGAGE, INC.**, a California corporation,
and **BANK OF AMERICA CORPORATION,**
a Delaware corporation, **NORTH COUNTY
REAL ESTATE d/b/a HMC FUNDING,**
a California corporation,

MAGISTRATE JUDGE
TURNOFF

Defendants.

_____/

FILED by ____ D.C.

DEC 2 2 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## BOAC'S[1] NOTICE OF REMOVAL

### I. INTRODUCTION

BOAC removes the action pending in the Circuit Court in and for Miami-Dade
County, Florida under case number 09-87580-CA-21.  The Circuit Court for Miami-Dade
County, Florida is within the Eleventh Judicial Circuit of the State of Florida, which is within
the Miami District of the United States District Court for the Southern District of Florida.
Removal is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### II. PROCEDURAL COMPLIANCE

This notice is timely.  *See* 28 U.S.C. § 1446(b) (where removal is based on
allegations of the complaint, the notice of removal must be filed "within 30 days after receipt

---

[1] "**BOAC**" refers to Bank of America Corporation.

by defendant, through service or otherwise, of a copy of the initial pleading"). BOAC first received Mr. Simmons' summons and initial pleading on December 9, 2009.

A copy of the state court's progress docket printed from the internet on December 22, 2009, is attached as EXHIBIT A. Legible copies of all process, pleadings, orders, and other papers or exhibits of every kind available to be copied from the state court are attached as COMPOSITE EXHIBIT B in compliance with 28 U.S.C. § 1446(a). Additional papers have been filed, but are not yet available in the file for copying. Once the remaining papers are available, BOAC will file a notice of supplemental papers with the Court.

Contemporaneous with the filing of this notice of removal, the undersigned has served a Notice of Filing of Notice of Removal upon Mr. Simmons as required by 28 U.S.C. § 1446(d), a copy of which (without exhibits) is attached as EXHIBIT C. The original of the notice attached as EXHIBIT C, with exhibits, is being filed with the Clerk of the Circuit Court in and for Miami-Dade County, Florida, as required by 28 U.S.C. § 1446(d).

Additionally, defendant Wells Fargo Bank, N.A., as successor by merger to Wells Fargo Home Mortgage, Inc. (**Wells Fargo**) consents to and joins in this notice of removal. A copy of its written consent is attached as EXHIBIT D.

As 28 U.S.C. § 1446(a) also requires, the grounds for removal are set forth below.

### III. SUMMARY OF GROUNDS FOR REMOVAL

Removal is grounded upon diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(b). Removal to this Court is appropriate because it is "the district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a); *see also* S.D. Fla. Local Rule 3.4(D) (providing that the Miami Division

encompasses Miami-Dade County, Florida).

## A.      Diversity of Citizenship.

Only BOAC and Wells Fargo have been served in this action.

Mr. Simmons resides in Miami-Dade County, Florida, (COMP. EX. B (**Compl.**) ¶ 3), and is a citizen of Florida.

BOAC is a Delaware corporation, and its principal place of business is located in Charlotte, North Carolina.   It is a citizen of Delaware and North Carolina.   *See* 28 U.S.C. § 1332(c)(1).

Wells Fargo Bank, N.A., as successor by merger to Wells Fargo Home Mortgage, Inc., is a national association with its main office in California, and South Dakota is the state listed in its organizational certificate.  *See Wachovia Bank, N.A. v. Schmidt*, 543 U.S. 303 (2006) (discussing citizenship of a national association).

While the "rule of unanimity" generally requires that all defendants consent to removal of a case to federal court, *see Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001), one recognized exception to the unanimity requirement is that a defendant not yet served with process need not join in removal.  *See White v. Bombardier Corporation*, 313 F. Supp. 2d 1295, 1299-1300 (N.D. Fla. 2004) (consent of one defendant not required where it was unserved at time of removal); *see also Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999); *McKinney v. Board of Trustees*, 955 F. 2d 924, 925 (4th Cir. 1992).  The pleadings and papers on file in the Miami-Dade County Circuit Court establish that no service return concerning the other defendant has been filed, and there is no

other indication that the remaining defendant has been served. (*See* Ex. A.)  Thus, at this time, BOAC, with Wells Fargo's consent, may remove this case.

Accordingly, removal is proper based on complete diversity. *See* 28 U.S.C. §§ 1332(a)(1) & 1441(b).[2]

### B.    Amount in Controversy.

The amount in controversy exceeds the sum of $75,0000.  Mr. Simmons asserts "[t]his is an action for damages in excess of $15,000.00 exclusive of interests, costs, and attorneys' fees." (Compl. ¶ 1.)  In addition to unspecified compensatory damages, treble damages, and attorneys' fees, (*id.* ¶¶ 75 & 89), Mr. Simmons also seeks cancellation of his mortgage loans. (*Id.* ¶ 91.)

A defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Leonard v. Enter. Rent a Car*, 279 F. 3d 967, 972 (11th Cir. 2002).  "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy, Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936)).

When "plaintiffs seek injunctive relief, the value of injunctive relief for amount in controversy purposes is the 'monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted.'" *Barber v. Ameriquest Capital Corp.*, No. 3:04-CV-1296-J-32TEM, at pp. 5-6 (M.D. Fla. Jan. 9, 2006) (Order attached as **Exhibit E**)

---

[2] The remaining defendant was incorporated under the laws of California.  (Compl. ¶ 4.)

(quoting *Leonard*, 279 F.3d at 973).  Where there is a binding contract, the pecuniary interest to plaintiff would be the amount of interest he would not have to pay over the life of the loan.[3]  *See Barber*, at pp. 6 & 9-10 (citing *Duderwicz, et al. v. Sweetwater Sav. Assoc.*, 595 F. 2d 1008, 1013 (5th Cir. 1979)).

The original amount of the first mortgage loan was $145,600.00.  (Compl. ¶ 40 & Ex. N.)  The loan has a fixed interest rate at 7.450% for 30 years.  (*Id.* ¶¶ 44-45.)  The interest due over the life of this loan totals approximately $219,108.80.  Even assuming four years of payments have already been made, "cancellation" of the mortgage loan would save Mr. Simmons approximately $176,562.54 in interest payments.

Consistent with *Barber*, the fact that Mr. Simmons may pay off the loan before its maturity date does not render speculative the amount in controversy based on interest owed over the life of the loan.  *See Barber*, at p. 10 ("That a particular borrower might pay off the loan early does not render the potential damages too speculative for the purpose of valuing the injunctive relief."); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("[T]he fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand.").

Another option to establish the amount in controversy is the market value of the home, *i.e.*, the object in dispute. *Mapp v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 435069,

---

[3] Rescission assumes Mr. Simmons would first tender the loan amount — a dubious assumption considering Mr. Simmons' claim that he cannot refinance his loans and is facing foreclosure. (*See* Compl. ¶¶ 52, 55.)

at *3 (M.D. Ala. 2009); *see also Roper v. Saxon Mortgage Servs., Inc.,* 2009 WL 1259193, at *2 (N.D. Ga. 2009); *Waller v. Prof. Ins. Corp.,* 296 F.2d 545, 547 (5th Cir.1961) ("[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy.").

Mr. Simmons is seeking clear title to the property. (Compl. ¶ 95.) Cancellation of the mortgage means that it cannot be foreclosed, so the value of the property, which exceeds the minimum amount in controversy, (*see id.* Exs. N & O); *see also Mapp,* 2009 WL 435069, at *3 (looking to the note and mortgage to determine amount in controversy), is the benefit that would flow to Mr. Simmons if the injunctive relief was granted.

## IV. CONCLUSION

Removal is proper pursuant to 28 U.S.C. § 1441(b) because this Court has subject matter jurisdiction under § 1332(a)(1) by virtue of the parties' complete diversity. BOAC has met all procedural requisites for removal, and this notice is timely filed. BOAC respectfully requests that the Court take jurisdiction over this matter and conduct all further proceedings in this case.

Respectfully submitted,

William P. Heller, Florida Bar No. 987263
e-mail: william.heller@akerman.com
Celia C. Falzone, Florida Bar No. 0016439
e-mail: celia.falzone@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301S
(954) 759-8945 (ph) / (954) 463-2224 (fax)
*Attorneys for Bank of America Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2009, a true and correct copy of the foregoing was sent via U.S. Mail to: **Joshua Bleil, Esq.**, The Ticktin Law Group, P.A., 600 West Hillsboro Boulevard, Suite 220, Deerfield Beach, Florida 33441-1610; and Michael Keith Winston, Esq., Carlton Fields, P.A., P.O. Box 150, West Palm Beach, Florida 33402-0150.

By: _____

Attorney

# EXHIBIT
# A

Miami-Dade County Clerk - Civil / Probate Justice System - Docket Information          Page 1 of 1



0 Item(s) In Basket          Home          Online Services          About us

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

**SIMMONS, WILLIAM H vs AMERICAS SVCING CO**
\* Click on BOOK/PAGE of a particular docket to see the image if it is available \*

Case Number (LOCAL): 2009-87580-CA-01 **Dockets Retrieved: 4**      Filing Date: 12/04/2009
Case Number (STATE): 13-2009-CA-087580-0000-01          Judicial Section: 21

| Date | Book/Page | Docket Entry | Comments |
|------|-----------|--------------|----------|
| 12/04/2009 | | CIVIL COVER | |
| 12/04/2009 | | COMPLAINT | |
| 12/04/2009 | | DEMAND FOR JURY TRIAL | |
| 12/04/2009 | | SUMMONS ISSUED | DN01 DN02 DN03 DK01 DK02 |

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

Civil Search Home | Help | Email | Logout
Home | Privacy Statement | Disclaimer | Contact Us | About Us
2008 Clerk of the Court. All Rights reserved.



S0141756

# COMPOSITE EXHIBIT B

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 09-87580 CA 21

WILLIAM H. SIMMONS,

        Plaintiff,

v.

AMERICA'S SERVICING COMPANY
a division of WELLS FARGO HOME
MORTGAGE, INC., a California corporation,
and BANK OF AMERICA CORPORATION,
a Delaware corporation, NORTH COUNTY
REAL ESTATE d/b/a HMC
FUNDING, a California corporation,

        Defendants.

_____/

## SUMMONS

### SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
### ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
### CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A:      **BANK OF AMERICA CORPORATION**
                  **C/O THEIR REGISTERED AGENT**
                  **C T CORPORATION SYSTEM**
                  **1200 S PINE ISLAND ROAD**
                  **PLANTATION, FL 33324 US**

## IMPORTANT

A lawsuit has been filed against you.  You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this county court, located at: 73 West Flagler Street, Suite 137, Miami, Florida, 33130.   A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

**If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning**

**from the Court.** There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the party serving this summons:

JOSHUA BLEIL, ESQUIRE
THE TICKTIN LAW GROUP, P.A.
600 West Hillsboro Boulevard
Suite 220
Deerfield Beach, Florida 33441-1610
(954) 570-6757

**Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.**

**You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Notice of Current Address, Florida Family Law Form 12.915.) Future papers in this lawsuit will be mailed to the address on record at the clerk's office.**

**WARNING: Rule 1.350, Florida Rules of Civil Procedure, requires certain automatic disclosure of documents and information. Failure to comply can result in sanctions, including dismissal or striking of pleadings.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Localizado en: 73 West Flagler Street, Suite 137, Miami, Florida 33130. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, usted puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta ante el tribunal, usted debe enviar por correo o entregar una copia de su respuesta a la persona denominada abajo.

Si usted elige presentar personalmente una respuesta por escrito, en el mismo momento que usted presente su respuesta por escrito al Tribunal, usted debe enviar por correo o llevar una copia de su respuesta por escrito a la parte entregando esta orden de comparecencia a:

Nombre y direccion de la parte que entrega la orden de comparencencia:
    Copias de todos los documentos judiciales de este caso, incluyendo las ordenes, estan disponibles en la oficina del Secretario de Juzgado del Circuito [Clerk of the Circuit Court's office]. Estos documentos pueden ser revisados a su solicitud.
    Usted debe de manener informada a la oficina del Secretario de Juzgado del Condado de su direccion actual. (Usted puede presentar _____ el Formulario: Ley de Familia de la Florida 12.915, [Florida Family Law Form 12.915], Notificacion de la Direccion Actual [Notice of Current Address].) Los papelos que se presenten en el futuro en esta demanda judicial seran env ados por correo a la direccion que este registrada en la oficina del Secretario.
    ADVERTENCIA: Regla 12.285 (Rule 12.285), de las Reglas de Procedimiento de Ley de Familia de la Florida [Florida Family Law Rules of Procedure], requiere cierta revelacion automatica de documentos e informacion. El incumplimient, puede resultar en sanciones, incluyendo la desestimacion o anulacion de los alegatos.

## IMPORTANT

    Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Qui se trouve a: 73 West Flagler Street, Suite 137, Miami, Florida 33130.   Un simple coup de telephone est insuffisant pour vous proteger; vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).
    Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite a la partie qui vous depose cette citation.
Nom et adresse de la partie qui depose cette citation:
    Les photocopies de tous les documents tribunals de cette cause, y compris des arrets, sont disponible au bureau du greffier. Vous pouvez revue ces documents, sur demande.
    Il faut aviser le greffier de votre adresse actuelle. (Vous pouvez deposer Florida Family Law Form 12.915, Notice of Current Address.) Les documents de l'avenir de ce proces seront envoyer a l' adresse que vous donnez au bureau du greffier.
    ATTENTION: La regle 12.285 des regles de procedure du droit de la famille de la Floride exige que l'on remette certains renseignements et certains documents □a la partie adverse. Tout refus de les fournir pourra donner lieu a des sanctions, y compris le rejet ou la suppression d'un ou de plusieurs actes de procedure.

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:  You are commanded to serve this summons and
a copy of the complaint in this lawsuit on the above-named person.

DATED: _____ **DEC - 4 2009**

CLERK OF THE CIRCUIT COURT
DALLAS WALKER

By:_____

Deputy Clerk

**FORM 1.997   CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075.

**I.      CASE STYLE**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

WILLIAM H. SIMMONS,

CASE #: 09 - 8 7 5 8 0 **CA** 2 1

   Plaintiff,

v.

   JUDGE:

AMERICA'S SERVICING COMPANY
a division of WELLS FARGO HOME
MORTGAGE, INC., a Delaware corporation,
and BANK OF AMERICA CORPORATION,
a Delaware corporation, NORTH COUNTY
REAL ESTATE d/b/a HMC FUNDING, a
California corporation,

   Defendants.

_____/

**II.      TYPE OF CASE** (Check one only.  If the case fits more than one type of case, select the most definitive.)

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ____ Simplified dissolution | ____ Professional malpractice | ____ Contracts |
| ____ Dissolution | ____ Products liability | ____ Condominium |
| ____ Support – IV-D | ____ Auto negligence | ____ Real property/ |
| ____ Support – Non IV-D | ____ Other negligence |    Mortgage foreclosure |
| ____ URESA – IV-D | | ____ Eminent Domain |
| ____ URESA – Non IV-D | | _X_ Other |
| ____ Domestic Violence | | |
| ____ Other domestic relations | | |

**III.      Is Jury Trial Demanded in Complaint?**

  _X_  Yes  ____  No

_____
DATE    12/3/2009

_____
SIGNATURE OF ATTORNEY OR PARTY PRO SE
INITIATING ACTION

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:  09 - 8 7 5 8 0 CA 2 1

WILLIAM H. SIMMONS,

        Plaintiff,

v.

AMERICA'S SERVICING COMPANY
a division of WELLS FARGO HOME
MORTGAGE, INC., a California corporation,
and BANK OF AMERICA CORPORATION,
a Delaware corporation, NORTH COUNTY
REAL ESTATE d/b/a HMC
FUNDING, a California corporation,

        Defendants.

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

The Plaintiff, WILLIAM H. SIMMONS (hereinafter referred to as the "Homeowner"), by and through his undersigned attorneys, hereby serves his Complaint and Demand for Jury Trial against AMERICA'S SERVICING COMPANY a division of WELLS FARGO HOME MORTGAGE, INC. (hereinafter referred to as "Servicer 1"), BANK OF AMERICA CORPORATION. (hereinafter referred to as "Servicer 2"), and NORTH COUNTY REAL ESTATE d/b/a HMC FUNDING (hereinafter referred to as the "Originator") (hereinafter collectively referred to as the "Defendants"), and states as follows:

## Jurisdiction and Venue

1.     This action is for damages exceeding $15,000.00 exclusive of interest, costs, and attorneys' fees.

2.     Venue is proper in this county as this is where the cause of action occurred, where the Defendants regularly conduct business, and where the property that is the subject of the contract is located.

## Parties

3.     The Homeowner is a natural person who resides in Miami-Dade County, Florida and is *sui juris*.

4.     The Originator is a California Corporation that at all times material hereto, carries on business in Miami-Dade County, Florida, and among other service, originates loans.

5.     The Servicer 1 is a Delaware Corporation that at all times material hereto, carries on business in Miami-Dade County, Florida, and it services the loan that is the subject of this lawsuit.

6.     The Servicer 2 is a Delaware Corporation that at all times material hereto, carries on business in Miami-Dade County, Florida, and it services the loan that is the subject of this lawsuit.

## Prefatory Statement

7.     Prior to the real estate boom that commenced in the early 2000's, the standard in the business of the residential house mortgage market was for originating banks to sell the mortgages that they obtained from homeowners (when there was a

refinance) or home buyers (when there was a purchase of a home) to banks that would then manage those mortgage loans.

8.     In those circumstances, the purchasing banks exercised caution and required specific information of the borrower to comply with 'know your customer' rules and to assure that they were not purchasing bad loans.

9.     However, with the advent of the widespread use of a relatively new vehicle, the Mortgage Backed Security (hereinafter "MBS"), originating banks, such as the Originator, stopped the practice of selling to managing banks, and, instead, the mortgages were collected and then securitized to be used as collateral to bonds that were then rated by institutions on Wall Street, and then sold to unsuspecting investors who were basing their purchases on the ratings of the security, rather than on the underlying reliability.

10.     The ultimate purchasers of the MBS were not concerned about the specific information about the borrowers and never dreamed to check to make sure that the underlying collateral was solid.  They did not check to assure that the borrowers were capable of paying the mortgage loans to which they became liable.

11.     It was clear and obvious to the originating banks and the brokers who worked for them or supplied service to them that there were no longer any controls. There was no balance and no need to be honest in the application process or in the process of inducing homeowners and home buyers to borrow far more than they could ever afford to repay.

12.     The originating banks engaged in a ruinous competition for bad loans that they could then sell on the world-wide securities market to unsuspecting investors.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE (954) 570-6757

13.     People, such as the Homeowners, who had lived a safe life and lived fairly well within their means were pushed and prodded into borrowing funds that made them unsafe.

14.     To take advantage of the susceptibility of the homeowners and home buyers, such as the Homeowners in this case, the Originator and the Broker were engaged in a scheme to steer their victims into risky subprime loans for their own gain.

15.     The basis of this scheme was the development of loans that were financially risky and difficult even for sophisticated borrowers to understand.  Loans of this type included: payment option hybrid adjustable rate mortgages; "Fast and Easy" stated income and asset loans; interest-only loans; and payment option adjustable rate mortgages.  Home equity lines of credit ("HELOC") were frequently used to obtain a second mortgage for the purpose of completing no money down, 100% financing transactions.

16.     Borrowers were pushed into these types of loans irrespective of their ability to repay, their suitability for other types of loans, or their ability to understand the complex and risky nature of the loans.

17.     Those loans were then bundled and sold on the world-wide securities market as MBS or a compilation of MBS called "Collateralized Debt Obligations" ("CDO") or "Collateralized Mortgage Obligations" ("CMO.")

18.     Securitizations of non-conforming (subprime) loans that were arranged and underwritten by private firms were in particularly high demand.

19.    Because they were comprised of riskier loans, these "private label" securitizations were generating higher returns for investor, as well as greater revenues for the originators.

20.    Suddenly, individual brokers were earning higher commissions that were paid by the lenders.  Being a mortgage broker became such a good way for the dishonest individuals to make good money that the rolls of mortgage brokers increased in the State of Florida from approximately 5,800 to over 16,000 from 2001 to 2006, many of whom had criminal records, as the influx was too great to check.

21.    Brokers and lending institutions were pressured to produce subprime loans that were "forward sold."  That is, they were pre-sold prior to their origination in order to fund MBS.  Lenders, including the Broker and the Originator, highly incentivized their employee brokers to place borrowers into subprime loans that matched the needed criteria.

22.    This instituted a quota system of loan production based on volume, with total disregard to a borrowers' ability to repay the loan.  In the past, the loan system was set up for borrowers to succeed, now it was set up in a manner that assured an almost certain failure.  Those who were financially secure and safe were now put in a position where they were likely to lose their homes and possibly made homeless.

23.    Deceptive sales tactics and deceptive marketing proliferated in order to fill these quotas at any price, including: failing to disclose future interest rate increases; failure to disclose the risk of negative amortization; making false representations to borrowers about prepayment penalties and the ability to refinance; and others.

24.     The elderly, immigrants and less educated were specifically targeted by these sales tactics.  The use of "affinity networks" to lure in groups of targets was a common ploy of predatory lenders, including the Broker and the Originator, who participated in the competition for bad mortgage loans.

25.     Downward pressure was constant to fulfill sales quotas causing fraud to become rampant in the system.  Brokers and their agents regularly falsified crucial information, for example inflating income to qualify a borrower, to meet the quotas that had been placed on them.

26.     These loans were commonly called and known to be "Liars' loans" in the industry.

27.     As the pressure to produce loans increased, underwriters, their superiors, branch managers and regional vice presidents were given the authority to grant exceptions to the Broker's and the Originator's minimal underwriting standards, and to change the terms of a loan.

28.     The lenders were fully aware of the illegalities and flawed data that fueled the industry growth, but continued the pattern of moral hazard.  That imprudent path undermined the stability of the financial system and threatened the general welfare of the United States and the rest of the world.

29.     In an effort to streamline the process of the transfer of so many titles, and to increase profits by eliminating required government fees, an automated system called the Mortgage Electronic Registration System ("MERS") was used to hold 60 million mortgage obligations on American homes.  This system has been proven to be flawed

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

in recent court decisions in that a proper chain of title no longer exists for many of these troubled assets/loans.

30.    A fall in home prices, coupled with a stall in the economy exposed this multi-trillion dollar automated Ponzi scheme that could only survive so long as fresh cash came in at the bottom.

31.    Greed was the motivating factor in these schemes.  Billions of dollars of profits, with total disregard for the safety of the underlying securities, were the goal.

32.    There is a line of greed that directly connects the mortgage agent present at the closing table, with the presidents and officers of all the major financial and lending institutions around the world.

33.    This scheme fundamentally put this nation on the brink of financial ruin.

34.    The Homeowner was one of the victims of this scheme.

35.    The Homeowner had completed only three (3) mortgage transactions prior to this one, and was looking forward to continuing to pursue the "American Dream" of homeownership.

36.    In his previous mortgage, the Homeowner had performed his duties diligently and was secure in her circumstances.  The Homeowner was lulled from the safety of his existing mortgage into the new predatory loan by the machinations of the Originator.

37.    The mortgage application process took more than four (4) weeks during which time the Defendants gave the Homeowner no indication of the mortgage terms, nor any other options available to him.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

38.     During the application process and prior to the closing of the loan, the Homeowner provided the Originator with verification of income including, but not limited to bank statements and other documentation regarding the him household income.

39.     The Homeowner's monthly income was $696.00 per month.  See attached hereto as Exhibit "A" a copy of the Homeowner's 2004 Income Tax Return.  The Homeowner provided an IRS Form 4506 from which the Homeowner's income was available to be verified by the agent.

40.     The conclusion of the application process was the documents were mailed to the Homeowner for his execution.  This was a common tactic of predatory lenders to not assist borrowers through the mortgage closing in an effort to obscure the details of the transaction from the homeowner.

41.     On or about December 8, 2005, the Homeowner closed on a first mortgage loan for a principal amount of $145,600.00, and a second mortgage in the amount of $27,300.00. The total of the first and second mortgage loans is $172,900.00, with a combined monthly payment of $2,123.00.

42.     The Lender on the mortgage loans was the Originator. The Mortgagee on the loans is Mortgage Electronic Registration Systems, Inc.

43.     The subject property (hereinafter the "property") is located at 1511 NW 49th Street West, Miami, Florida 33142, which is legally described as:

> The West 62.5 Feet of Lots 11&12 in Block 7 of North Miami Estates, According to the Plat Thereof, As Recorded In Plat Book No. 6 at Page 139 of the Public Records of Miami-Dade County, Florida.

44.     The first mortgage was a fixed rate 30-year mortgage that contained a two (2) pre-payment penalty and an interest rate of 7.450%.

8

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

45.    The second mortgage was a 15-year mortgage with a fixed interest rate of 11.990% and a two (2) year prepayment penalty.

46.    Piggy-backing 1st and 2nd mortgages simultaneously was a common scheme of predatory lenders to place consumers into loans which they could not afford, and for which they would otherwise not have been approved.  The Homeowner now finds himself without the ability to refinance to more favorable terms due to the high loan to value ratio and lack of equity.  Like others who were victimized by these schemes, the Homeowner is trapped in a tenuous situation by the circumstances of the predatory mortgages.

47.    Originator encouraged, by practice and tacit acceptance, its agents who facilitated the loan transaction, to fraudulently increase and grossly overstate the Homeowner's income to approximately $4,921.00 per month. This qualified the Homeowner for a higher loan than his verifiable income could possibly support.

48.    The documents that were mailed to the Homeowner were pre-tabbed for his signature.  The Homeowner was left on his own to read and understand over 100 pages of highly technical and detailed financial documents, with sufficient pressure to overcome any skepticism, as he did not understand what he was signing knowingly, intelligently and voluntarily.  Important terms of the contract, such as the Jury Trial Waiver, were not pointed out to the Homeowner.  He had no idea of any of these details.

49.    The Homeowner was not provided with true and accurate copies of important documents including:

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

a. Copies of the lock-in agreement executed between the lender's agent and the lender that notes the Yield Spread Premium ("YSP") paid by the lender to the lender's agent;

b. Copies of other pertinent documents, not yet known, that were executed by the Homeowner at or before the closing.

50. The unknown YSP is reflected in an increase in the interest rate and terms of the note, and resulted in payments of excess interest in an amount yet to be determined.

51. By failing to disclose the YSP paid by the Homeowner, the Defendants and their agents have skewed the accuracy of the credited payments and the calculated interest paid by the Homeowner to Originator.

52. Because of the fraud, damaging terms, excessive debt to income ratio and excessively high loan to value ratio, the Homeowner finds himself trapped in a rapacious loan that cannot be refinanced and threatens his financial stability.

53. Subsequent to the closing, the Servicers became activated, as the loans were securitized.

54. The Servicers were aware of the entire nature of the mortgage industry, including all that was described above, including the aspect of the Liars' Loans.

55. The Servicers began to accept mortgage payments from the Homeowner, and ultimately have threatened to bring suit against the Homeowner for foreclosure if the Homeowner fails to make his payments current.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

56.    In this regard, the Servicer has operated in a pattern of criminal conduct by developing an assembly line of affidavits that are false, perjury, and which are used to obtain interests in billions of dollars of real property and to support an enterprise.

57.    The Homeowner has retained the undersigned attorneys and has agreed to pay a reasonable fee for the services that they render.

## Count I – Fraud
## (As to the Originator)

58.    The Homeowner avers the allegations contained in Paragraphs 1 through 56 above, and incorporates them in this Count by reference as though they are fully restated herein.

59.    The Originator misrepresented the terms of the Mortgage Loan by:

a.    providing the Homeowner with two (2) different Universal Loan Applications, with different total asset amounts.  Both were signed by the Homeowner on December 7, 2005.  Both were signed by Joe Chutuk of HMC Funding on on December 1, 2005 and December 12, 2005, respectively.  Manipulation of assets was a common ploy of predatory lenders like the Defendants;

b.    stating on the face of the mortgage loans that the lender was NCRE County Real Estate DBA HMC Funding while the HUD-1 statement lists the lender as Mortgage XL obscuring the true parties to the transaction of the subject mortgage loans;

c.    making false statements to the Homeowner regarding the loan, including the annual percentage rate, the finance charges, the total

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

payments, the payment schedule and the amount financed.  These false statements were made by Joe Chutuk of the Originator;

d.      making false statements to the Homeowner stating that the loan was fair and the only type of loan available to him;

e.      making false statements to the Homeowner that it would help his to refinance with more favorable terms; and

f.      concealing information from the Homeowner that would have helped him to make an informed decision regarding his financial choices.

60.    To his detriment, the Homeowner relied on all of the aforementioned fraudulent statements when making his decision to purchase the Mortgage Loan. Originator knew or should have known that these statements were false, especially since the Homeowners' monthly income was $696.00 per month.  The Homeowner provided an IRS Form 4506 from which the Homeowner's income was available to be verified by the agent

61.    The Homeowner justifiably relied on Originator's assertions and because of the fraudulent actions of Originator and its agents, the Homeowner has been damaged. He now finds himself in a precarious financial position and is faced with the possibility of losing his home.

WHEREFORE, the Homeowner asks this Honorable Court for a judgment of compensatory damages, costs, interest, and such further and other relief as this Court may deem just and proper.  The Homeowner demands a trial by jury on all issues so triable.

12

**Count II - Violation of Fla. Stat. §772.103(1)**
**Civil Remedies for Criminal Activities**
**Pattern of Criminal Activity**
**(As to Servicer 1)**

62.   The Homeowner avers the allegations contained in Paragraphs 1 through 57 above, and incorporates them in this Count by reference as though they are fully restated herein.

63.   The Originator and the Broker each and in cooperation, together, through their agents and/or employees, acting in the course of their duties with the Originator and the Broker, with criminal intent, perpetuated a pattern of criminal activity by violating § 817, Florida Statutes by committing fraud upon the Homeowner, unsuspecting investors,  and other borrowers and received proceeds from that pattern of criminal activity to use in the acquisition of real property by obtaining mortgages on those properties.

64.   More specifically, the predicate criminal acts violating Fla. Stat. §817 committed were:

a.   Predicate Act 1, Fraud, Chapter 817, Florida Statutes

   1.   On or about December 15, 2005, the originator induced Lorene Lubin to obtain two mortgages.

   2.   In this regard, Ms. Lubin provided her correct income information, $1,600.00 per month, to the originator.  However, the broker, without the knowledge or consent of Ms. Lubin, misrepresented the amount of Ms. Lubin's income to the originator and qualified her for two loans, $212,000.00 and $53,000, totaling $265,000.00.

13

3. Similar to the Homeowner in the instant case, the originator used a common tactic of piggy-backing predatory adjustable rate loans to qualify the homeowner for loans for which they would not normally qualify.

4. The originator was fully aware that their agent was presenting what it understood to be "Liar Loans," in which the amount of the income was greatly exaggerated to enhance the value and saleability of the mortgage that the originator obtained from Ms. Lubin.

5. In this regard, the originator issued Policies and Operational Procedures to solicit and provided hundreds of variations of offers to otherwise intentionally encouraged and compensate their agents to provide mortgage applications with false and exaggerated income reported from unsuspecting homeowners and home buyers, so that the originator was able to make great profits by securitizing the mortgage to collateralize a bone which was then rated based on the false information in the loan application, and ultimately by having unsuspecting purchasers on the international securities market invest in that collateralized bond, which was a mortgage backed security.

6. The originator obtained and processed the loan application from Ms. Lubin with criminal intent to falsify records of the borrower, as it knew that it was processing bad loans for the sake of its own profit, contrary to Chapter 817, Florida Statutes.

7. In so doing this nasty business, the agent and the originator caused great harm to Ms. Lubin, in that the loan to Ms. Lubin was not one that she

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

could possibly afford to repay, and this action required the inducement of Ms. Lubin to apply for a loan that would take her from a relatively safe position to one that was most certainly going to ruin Ms. Lublin's credit and cause her to be in the untenable position of having her very home threatened and possibly lost.

8. The actions of the originator were done for the purpose of supporting itself, which is an enterprise.

65. The Servicer was aware that the conduct of the Broker and the Originator, which was also commonplace in the industry, and began to accept proceeds from the pattern of criminal activity that was perpetrated by the Broker and Originator.

66. In so doing, the Servicer was acting with criminal intent to receive proceeds that derived directly from the pattern of criminal activity and it used part of those proceeds indirectly in the acquisition of title to real property and in the acquisition of an interest in real property and in the operation of itself, which is an enterprise.

67. Moreover, in the course of collecting proceeds in similar cases where the Servicer was bringing suit to obtain the title of real property, it commenced a further pattern of criminal conduct in that it set in motion a plan whereby false affidavits were pumped out of a group of individuals who were preparing and filing affidavits that it knew were based on perjury.

68. The Affidavits were used in support of motions for summary judgment in the courts of the State of Florida and across the country. By having its lawyers present the perjured affidavits to the courts, the Servicer was able to cause the courts to issue

final judgments of foreclosure against its borrowers, and thereby obtain title to real property and other proceeds.

69.     In this manner, the Servicer committed the following predicate acts:

a.  Predicate Act 2, Perjury,  Chapter 837.02 Florida Statutes

1.      In the matter of *Wells Fargo Bank v. Stevens*, Case No.: 50-2008-CA-000752, in the 15th Judicial Circuit in and for Palm Beach County, Florida, the Processor had an assembly line created which provided a false affidavit, a copy of which is attached hereto as Exhibit "B".

2.      This affidavit was false in that it states the amount due and owing on the subject mortgage was based on the personal knowledge of the matter by the affiant.  The affidavit was produced by an assembly line system that was initiated for the purpose of processing vast numbers of foreclosures.  In this assembly line method of doing business the affiants cannot and do not have personal knowledge they swear to and then present to the courts.

3.      This affidavit was used to obtain a final judgment of foreclosure which was entirely based on perjury.  A copy of the final judgment is attached hereto as Exhibit "C".

b.  Predicate Act 3, Perjury, Chapter 837.02 Florida Statutes

1.      In the matter of *Wells Fargo Bank v. Aumhammer*, Case No. 50-2008-CA-013913, in the 15th Judicial Circuit in and for Palm Beach County, Florida, the Processor had an assembly line created which provided a false affidavit, a copy of which is attached hereto as Exhibit "D".

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

2.      This affidavit was false in that it states the amount due and owing on the subject mortgage was based on the personal knowledge of the matter by the affiant. The affidavit was produced by an assembly line system that was initiated for the purpose of processing vast numbers of foreclosures. In this assembly line method of doing business the affiants cannot and do not have personal knowledge they swear to and then present to the courts.

3.      This affidavit was used to obtain a final judgment of foreclosure which was entirely based on perjury. A copy of the final judgment is attached hereto as Exhibit "E".

c.  Predicate Act 5, Perjury, Chapter 837.02 Florida Statutes

1.      In the matter of *Wells Fargo Bank v. Novoa,* Case No. 50-2008-CA-001525, in the 15th Judicial Circuit in and for Palm Beach County, Florida, the Processor had an assembly line created which provided a false affidavit, a copy of which is attached hereto as Exhibit "F".

2.      This affidavit was false in that it states the amount due and owing on the subject mortgage was based on the personal knowledge of the matter by the affiant. The affidavit was produced by an assembly line system that was initiated for the purpose of processing vast numbers of foreclosures. In this assembly line method of doing business the affiants cannot and do not have personal knowledge they swear to and then present to the courts.

3.      This affidavit was used to obtain a final judgment of foreclosure which was entirely based on perjury. A copy of the final judgment is attached hereto as Exhibit "G".

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

d. <u>Predicate Act 5, Perjury, Chapter 837.02 Florida Statutes</u>

1.    In the matter of *Wells Fargo Bank v. Goode,* Case No. 50-2008-CA-019786, in the 15th Judicial Circuit in and for Palm Beach County, Florida, the Processor had an assembly line created which provided a false affidavit, a copy of which is attached hereto as Exhibit "H".

2.    This affidavit was false in that it states the amount due and owing on the subject mortgage was based on the personal knowledge of the matter by the affiant. The affidavit was produced by an assembly line system that was initiated for the purpose of processing vast numbers of foreclosures. In this assembly line method of doing business the affiants cannot and do not have personal knowledge they swear to and then present to the courts.

3.    This affidavit was used to obtain a final judgment of foreclosure which was entirely based on perjury. A copy of the final judgment is attached hereto as Exhibit "I".

70.    In each of the counts, above, the affidavits allege that the affiants had personal knowledge of the information contained therein, when in fact the affiants did not have such knowledge.

71.    After the affiants signed the affidavits, additional pages were then affixed thereto.

72.    The affiants could not have believed that the statements made were true because the affiants had no knowledge whatsoever of the written assertions made.

73.    The affiants' statements were purportedly made under oath and before notaries.

18

74.    The affidavits became part of official proceedings and lawsuits, such that the servicers presented the false affidavits of document custodians attached as exhibits in foreclosure actions, and presented the false affidavits to the court.

75.    The false affidavits related to material matters in litigation, and caused the Servicer to obtain an interest in real property and in proceeds that helped them maintain an enterprise.

WHEREFORE, the Homeowner asks this Honorable Court for a judgment of compensatory damages, treble damages, attorneys' fees and costs pursuant to Fla. Stat. §772.104, and such further and other relief as this Court may deem just and proper. The Homeowner demands a trial by jury on all issues so triable.

### Count III - Violation of Fla. Stat. §772.103(1)
### Civil Remedies for Criminal Activities
### Pattern of Criminal Activity
### (As to Servicer 2)

76.    The Homeowner avers the allegations contained in Paragraphs 1 through 57 above, and incorporates them in this Count by reference as though they are fully restated herein.

77.    The Originator and the Broker each and in cooperation, together, through their agents and/or employees, acting in the course of their duties with the Originator and the Broker, with criminal intent, perpetuated a pattern of criminal activity by violating § 817, Florida Statutes by committing fraud upon the Homeowner, unsuspecting investors,  and other borrowers and received proceeds from that pattern of criminal activity to use in the acquisition of real property by obtaining mortgages on those properties.

78.     More specifically, the predicate criminal acts violating Fla. Stat. §817 committed were:

a.   <u>Predicate Act 1, Fraud, Chapter 817, Florida Statutes</u>

1.  On or about December 15, 2005, the originator induced Lorene Lubin to obtain two mortgages.

2.  In this regard, Ms. Lubin provided her correct income information, $1,600.00 per month, to the originator.  However, the broker, without the knowledge or consent of Ms. Lubin, misrepresented the amount of Ms. Lubin's income to the originator and qualified her for two loans, $212,000.00 and $53,000, totaling $265,000.00.

3.  Similar to the Homeowner in the instant case, the originator used a common tactic of piggy-backing predatory adjustable rate loans to qualify the homeowner for loans for which they would not normally qualify.

4.  The originator was fully aware that their agent was presenting what it understood to be "Liar Loans," in which the amount of the income was greatly exaggerated to enhance the value and saleability of the mortgage that the originator obtained from Ms. Lubin.

5.  In this regard, the originator issued Policies and Operational Procedures to solicit and provided hundreds of variations of offers to otherwise intentionally encouraged and compensate their agents to provide mortgage applications with false and exaggerated income reported from unsuspecting homeowners and home buyers, so that the

originator was able to make great profits by securitizing the mortgage to collateralize a bone which was then rated based on the false information in the loan application, and ultimately by having unsuspecting purchasers on the international securities market invest in that collateralized bond, which was a mortgage backed security.

6. The originator obtained and processed the loan application from Ms. Lubin with criminal intent to falsify records of the borrower, as it knew that it was processing bad loans for the sake of its own profit, contrary to Chapter 817, Florida Statutes.

7. In so doing this nasty business, the agent and the originator caused great harm to Ms. Lubin, in that the loan to Ms. Lubin was not one that she could possibly afford to repay, and this action required the inducement of Ms. Lubin to apply for a loan that would take her from a relatively safe position to one that was most certainly going to ruin Ms. Lublin's credit and cause her to be in the untenable position of having her very home threatened and possibly lost.

79.    The actions of the originator were done for the purpose of supporting itself, which is an enterprise. The Servicer was aware that the conduct of the Broker and the Originator, which was also commonplace in the industry, and began to accept proceeds from the pattern of criminal activity that was perpetrated by the Broker and Originator.

80.    In so doing, the Servicer was acting with criminal intent to receive proceeds that derived directly from the pattern of criminal activity and it used part of

those proceeds indirectly in the acquisition of title to real property and in the acquisition of an interest in real property and in the operation of itself, which is an enterprise.

81.     Moreover, in the course of collecting proceeds in similar cases where the Servicer was bringing suit to obtain the title of real property, it commenced a further pattern of criminal conduct in that it set in motion a plan whereby false affidavits were pumped out of a group of individuals who were preparing and filing affidavits that it knew were based on perjury.

82.     The Affidavits were used in support of motions for summary judgment in the courts of the State of Florida and across the country. By having its lawyers present the perjured affidavits to the courts, the Servicer was able to cause the courts to issue final judgments of foreclosure against its borrowers, and thereby obtain title to real property and other proceeds.

83.     In this manner, the Servicer committed the following predicate acts:

a.     Predicate Act 2, Perjury, Chapter 837.02 Florida Statutes

1.     In the matter of *Bank of America v. Cherichele,* Case No.: 50-2008-CA010587, in the 15th Judicial Circuit in and for Palm Beach County, Florida, the Processor had an assembly line created which provided a false affidavit, a copy of which is attached hereto as Exhibit "J".

2.     This affidavit was false in that it states the amount due and owing on the subject mortgage was based on the personal knowledge of the matter by the affiant. The affidavit was produced by an assembly line system that was initiated for the purpose of processing vast numbers of foreclosures. In this

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

assembly line method of doing business the affiants cannot and do not have personal knowledge they swear to and then present to the courts.

3.      This affidavit was used to obtain a final judgment of foreclosure which was entirely based on perjury. A copy of the final judgment is attached hereto as Exhibit "K".

b. <u>Predicate Act 3, Perjury, Chapter 837.02 Florida Statutes</u>

1.      In the matter of *Bank of America v. Gadoury,* Case No. 50-2008-CA-3952, in the 15th Judicial Circuit in and for Palm Beach County, Florida, the Processor had an assembly line created which provided a false affidavit, a copy of which is attached hereto as Exhibit "L".

2.      This affidavit was false in that it states the amount due and owing on the subject mortgage was based on the personal knowledge of the matter by the affiant. The affidavit was produced by an assembly line system that was initiated for the purpose of processing vast numbers of foreclosures. In this assembly line method of doing business the affiants cannot and do not have personal knowledge they swear to and then present to the courts.

3.      This affidavit was used to obtain a final judgment of foreclosure which was entirely based on perjury. A copy of the final judgment is attached hereto as Exhibit "M".

84.     In each of the counts, above, the affidavits allege that the affiants had personal knowledge of the information contained therein, when in fact the affiants did not have such knowledge.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

85.   After the affiants signed the affidavits, additional pages were then affixed thereto.

86.   The affiants could not have believed that the statements made were true because the affiants had no knowledge whatsoever of the written assertions made.

87.   The affiants' statements were purportedly made under oath and before notaries.

88.   The affidavits became part of official proceedings and lawsuits, such that the servicers presented the false affidavits of document custodians attached as exhibits in foreclosure actions, and presented the false affidavits to the court.

89.   The false affidavits related to material matters in litigation, and caused the Servicer to obtain an interest in real property and in proceeds that helped them maintain an enterprise.

WHEREFORE, the Homeowner asks this Honorable Court for a judgment of compensatory damages, treble damages, attorneys' fees and costs pursuant to Fla. Stat. §772.104, and such further and other relief as this Court may deem just and proper. The Homeowner demands a trial by jury on all issues so triable.

## Count IV – Action to Quiet Title

90.   The Homeowner avers the allegations contained in Paragraphs 1 through 57 above, and incorporates them in this Count by reference as though they are fully restated herein.

91.   The Servicer is not the rightful owner of the Property, but may assert a claim which may cast a cloud on the title of the Homeowner, and the Homeowner seeks

24

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

to have the mortgages of the Servicer cancelled and the cloud removed from the title and to have her title quieted.

92.     The Homeowner is in possession of the real property in question.

93.     The only claim that the Servicer has to the Property is based on the mortgage which is the subject of this Complaint.   A copy of the mortgage is attached hereto as Exhibit "N".

94.     The said mortgage cannot be one for which the Servicer may have a claim, in that it can get no relief from a court of equity in that it has unclean hands, in that the Defendants:

        a.      Committed fraud by:

                1.      inflating the Homeowner's income to qualify him for a larger loan;

                2.      providing multiple versions of documents for the Homeowner to sign, obscuring the true costs and terms of the mortgage.

                3.      making false statements regarding the APR, finance charges, total payments, and payment schedule of the mortgage and note;

                4.      making false statements that the Homeowner only qualified for this predatory loan, and it was the only loan available to him; and

                5.      purposely withholding information that would have helped him to make an informed decision.

        b.      Violated Fla. Stat. § 772.103 through the pattern of criminal activity, including the criminal activities of:

                1.      Perjury, Fla. Stat. § 837.02;

2.      Fraud, Fla. Stat. § 817.545;

95.    The Defendants knew or should have known of such conduct and has no right to enforce any terms of the mortgage against said property, as any such action would be in a Court of Equity, and unclean hands is a full defense to any such claim.

WHEREFORE, the Homeowner asks this Honorable Court for a Judgment against the Defendants and to quiet the title in favor of the Homeowner and adjudging that the Homeowner has a good fee simple title to said Property.  Pursuant to § 65.081, the Homeowner demands trial by jury.

Dated this 3rd day of December, 2009.

THE TICKTIN LAW GROUP, P.A.
Attorneys for the Homeowner
600 West Hillsboro Boulevard
Suite 220
Deerfield Beach, Florida  33441-1610
Telephone: (954) 570-6757

By: _____
JOSHUA BLEIL, ESQUIRE
FLORIDA BAR NO.: 11759

S:\Company\documents\1-CLIENTS NATIONAL - Florida\Simmons, William 09-2909\Complaint Simmons Rev.doc

**Form 1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 2004   (99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1-Dec. 31, 2004, or other tax year beginning , 2004, ending ,20   OMB No. 1545-0074

**Label** (See instructions on page 15.) Use the IRS label. Otherwise, please print or type.

Your first name and initial: WILLIAM H   Last name: SIMMONS JR

Home address (number and street). If you have a P.O. box, see page 16.: 1511 NW 49TH STREET   Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.: MIAMI, FL 33142-0000

Your social security number: ___-__-8498

Spouse's social security number

**IMPORTANT!** You must enter your SSN(s) above. ▲

**Presidential Election Campaign** (See page 16.)

Note. Checking "Yes" will not change your tax or reduce your refund.

Do you, or your spouse if filing a joint return, want $3 to go to this fund?▶ You [ ] Yes [X] No   Spouse [ ] Yes [ ] No

**Filing Status**

Check only one box.

1 [ ] Single

2 [ ] Married filing jointly (even if only one had income)

3 [ ] Married filing separately. Enter spouse's SSN above and full name here. ▶

4 [X] Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶

5 [ ] Qualifying widow(er) with dependent child. (See page 17.)

**Exemptions**

6a [X] Yourself. If someone can claim you as a dependent, do not check box 6a . . . . . . .

b [ ] Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

c Dependents:

| (1) First Name   Last Name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) X if qualifying child for child tax credit (see pg 18) |
|---|---|---|---|
| SOLOMON  SIMMONS | ___-__-7042 | SON | |
| | | | |
| | | | |
| | | | |

If more than four dependents, see page 18.

d Total number of exemptions claimed

Boxes checked on 6a and 6b: **1**

No. of children on 6c who:
• lived with you: **1**
• did not live with you due to divorce or separation (see page 18): **0**

Dependents on 6c not entered above: **0**

Add numbers on lines above ▶ **2**

**Income**

Attach Forms W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . | 7 | 6000 |
| 8a | Taxable interest. Attach Schedule B if required . . . . . . . . . | 8a | |
| b | Tax-exempt interest. DO NOT include on line 8a. . . . | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required . . . . . . . . | 9a | |
| b | Qualified dividends (see page 20) . . . . . . . . . | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 20) . . . | 10 | |
| 11 | Alimony received . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ . . . . . | 12 | 2532 |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ [ ] | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . | 14 | |
| 15a | IRA distributions . . . . . | 15a | b Taxable amount (see page 22) | 15b | |
| 16a | Pensions and annuities . . | 16a | b Taxable amount (see page 22) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . . | 18 | |
| 19 | Unemployment compensation . . . . . . . . . . . . | 19 | |
| 20a | Social security benefits . . . 20a | 5683 | b Taxable amount (see page 24) | 20b | |
| 21 | Other income. List type and amount (see page 24) | 21 | |
| 22 | Add the amounts in the far right column for lines 7 - 21. This is your **total income** ▶ | 22 | 8532 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses (see page 26) . . . . . . . . . . . | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | IRA deduction (see page 26) . . . . . . . . . . . | 25 | |
| 26 | Student loan interest deduction (see page 28) . . . . . . | 26 | |
| 27 | Tuition and fees deduction (see page 29) . . . . . . . | 27 | |
| 28 | Health savings account deduction. Attach Form 8889 . . . | 28 | |
| 29 | Moving expenses. Attach Form 3903 . . . . . . . . | 29 | |
| 30 | One-half of self-employment tax. Attach Schedule SE . . . | 30 | 179 |
| 31 | Self-employed health insurance deduction (see page 30) . | 31 | |
| 32 | Self-employed SEP, SIMPLE, and qualified plans . . . . | 32 | |
| 33 | Penalty on early withdrawal of savings . . . . . . . . | 33 | |
| 34a | Alimony paid. b Recipient's SSN ▶ | 34a | |
| 35 | Add lines 23 through 34a. . . . . . . . . . . . . . | 35 | 179 |
| 36 | Subtract line 35 from line 22. This is your adjusted gross income . . . . . . . . . ▶ | 36 | 8353 |

**EXHIBIT A** tabbles

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 75.   QNA Copyright (c) 2004 TAXSLAYER.   Form 1040 (2004)

Form 1040 (2004)  **SIMMONS JR**  ▓▓▓▓-8498  Page 2

| Tax and Credits | 37 | Amount from line 36 (adjusted gross income) . . . . . . . . . . . . . . . . . . . ▶ | 37 | 8353 |
|---|---|---|---|---|

**Standard Deduction for –**
- People who checked any box on line 38a or 38b or who can be claimed as a dependent, see page 31.
- All others

Single or Married filing Separately, $4,850

Married filing jointly or Qualifying widow(er), $9,700

Head of household, $7,160

| | | | | |
|---|---|---|---|---|
| 38a | Check | [X] You were born before January 2, 1940, [ ] Blind; Total boxes [ ] Spouse was born before January 2, 1940, [ ] Blind. checked ▶ 38a | 1 | |
| b | | If you are itemizing on a separate return or you were a dual-status alien, see page 31 and check here . . ▶ 38b [ ] | | |
| 39 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) . . . . | 39 | 8350 |
| 40 | Subtract line 39 from line 37 . . . . . . . . . . . . . . . . . . . . . . . | 40 | 3 |
| 41 | If line 37 is $107,025 or less, multiply $3,100 by the total number of exemptions claimed on line 6d. If line 37 is over $107,025, see the worksheet on page 33 . . . . . . . . . | 41 | 6200 |
| 42 | Taxable income. Subtract line 41 from line 40. If line 41 is more than line 40, enter -0- . . . . | 42 | 0 |
| 43 | Tax. (See page 33.) Check if any tax is from a [ ] Form(s) 8814 b [ ] Form 4972 . . | 43 | |
| 44 | Alternative minimum tax. (see page 35). Attach Form 6251 . . . . . . . . . . . | 44 | |
| 45 | Add lines 43 and 44 . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 45 | |
| 46 | Foreign tax credit. Attach Form 1116 if required . . . . . . . | 46 | |
| 47 | Credit for child and dependent care expenses. Attach Form 2441. | 47 | |
| 48 | Credit for the elderly or the disabled. Attach Schedule R . . . . | 48 | |
| 49 | Education credits. Attach Form 8863 . . . . . . . . . . | 49 | |
| 50 | Retirement savings contributions credit. Attach Form 8880 . . . | 50 | |
| 51 | Child tax credit (see page 37) . . . . . . . . . . . . | 51 | |
| 52 | Adoption credit. Attach Form 8839 . . . . . . . . . . . | 52 | |
| 53 | Credits from: a [ ] Form 8396 b [ ] Form 8859 | 53 | |
| 54 | Other credits. Check applicable box(es): a [ ] Form 3800 b [ ] Form 8801 c [ ] Specify | 54 | |
| 55 | Add lines 46 through 54. These are your total credits . . . . . . . . . . . . | 55 | |
| 56 | Subtract line 55 from line 45. If line 55 is more than line 45, enter -0- . . . . . . . ▶ | 56 | 0 |

| Other Taxes | | | | |
|---|---|---|---|---|
| 57 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . . . . . | 57 | 358 |
| 58 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 . | 58 | |
| 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required . . | 59 | |
| 60 | Advance earned income credit payments from Form(s) W-2 . . . . . . . . . . . . | 60 | |
| 61 | Household employment taxes. Attach Schedule H . . . . . . . . . . . . . . . | 61 | |
| 62 | Add lines 56 through 61. This is your total tax . . . . . . . . . . . . . . ▶ | 62 | 358 |

| Payments | | | | |
|---|---|---|---|---|
| If you have a qualifying child, attach Schedule EIC. | 63 | Federal income tax withheld from Forms W-2 and 1099 . . . | 63 | 415 | |
| | 64 | 2004 estimated tax payments and amount applied from 2003 return . | 64 | | |
| | 65a | Earned income credit (EIC) . . . . . . . . . . . | 65a | 2604 | |
| | b | Nontaxable combat pay election ▶ 65b | | | |
| | 66 | Excess social security and tier 1 RRTA tax withheld (see page 54) . | 66 | | |
| | 67 | Additional child tax credit. Attach Form 8812 . . . . . . | 67 | | |
| | 68 | Amount paid with request for extension to file (see page 54) . . | 68 | | |
| | 69 | Other payments from: a [ ] Form 2439 b [ ] Form 4136 c [ ] Form 8885 | 69 | | |
| | 70 | Add lines 63, 64, 65a, and 66 through 69. These are your total payments . . . . . . ▶ | 70 | 3019 |

| Refund | | | | |
|---|---|---|---|---|
| Direct deposit? See page 54 and fill in 72b, 72c, and 72d. | 71 | If line 70 is more than line 62, subtract line 62 from line 70. This is the amount you overpaid . . | 71 | 2661 | |
| | 72a | Amount of line 71 you want refunded to you . . . . . . . . . . . . . . ▶ | 72a | 2661 |
| | ▶ b | Routing number [X][X][X][X][X][X][X][X][X] ▶ c Type: [ ] Checking [ ] Savings | | |
| | ▶ d | Account number [X][X][X][X][X][X][X][X][X][X][X][X][X][X][X][X][X] | | |
| | 73 | Amount of line 71 you want applied to your 2005 estimated tax ▶ 73 | | |

| Amount You Owe | 74 | Amount you owe. Subtract line 70 from line 62. For details on how to pay, see page 55 . ▶ | 74 | |
|---|---|---|---|---|
| | 75 | Estimated tax penalty. (see page 55.) . . . . . . . . . 75 | | |

| Third Party Designee | Do you want to allow another person to discuss this return with the IRS (see page 56)? [ ] Yes. Complete the following. [X] No | | | |
|---|---|---|---|---|
| | Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ | |

**Sign Here**
Joint return? See page 17.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date 02-28-05 | Your occupation ELECTRICAL ENGINEERING | Daytime phone number 305 |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

| Paid Preparer's Use Only | Preparer's signature ▶ | Date 02/28/05 | Check if self-employed [ ] | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | **TITANIC INSURANCE AGENCY, INC** **34 NW 54TH STREET** **MIAMI, FL 33127** | EIN — | |
| | | | Phone no. | |

ONA Copyright (c) 2004 TAXSLAYER

Form 1040 (2004)

**SCHEDULE EIC**
(Form 1040A or 1040)

Department of the Treasury
Internal Revenue Service

Name(s) shown on return

# Earned Income Credit
Qualifying Child Information

Complete and attach to Form 1040A or 1040
only if you have a qualifying child.

OMB No. 1545-0074

**2004**

Attachment
Sequence No.  43

Your social security number

WILLIAM SIMMONS JR | ▮▮▮-▮▮-8498

**Before You Begin:** See the instructions for Form 1040A, lines 41a and 41b, or Form 1040, lines 65a and 65b, to make sure that (a) you can take the EIC and (b) you have a qualifying child.

**Caution:**
- If you take the EIC even though you are not eligible, you may not be allowed to take the credit for up to 10 years. See back of schedule for details.
- It will take us longer to process your return and issue your refund if you do not fill in all lines that apply for each qualifying child.
- Be sure the child's name on line 1 and social security number (SSN) on line 2 agree with the child's social security card. Otherwise, at the time we process your return, we may reduce or disallow your EIC. If the name or SSN on the child's social security card is not correct, call the Social Security Administration at 1-800-772-1213.

| **Qualifying Child Information** | **Child 1** | | **Child 2** | |
|---|---|---|---|---|
| | First name | Last name | First name | Last name |
| **1** Child's name<br><br>If you have more than two qualifying children, you only have to list two to get the maximum credit. | SOLOMON | SIMMONS | | |
| **2** Child's (SSN)<br><br>The child must have an SSN as defined on page 42 of the Form 1040A instructions or page 44 of the Form 1040 instructions unless the child was born and died in 2004. If your child was born and died in 2004 and did not have an SSN, enter "Died" on this line and attach a copy of the child's birth certificate. | ▮▮▮-▮▮-7042 | | | |
| **3** Child's year of birth | Year   1987<br>If born after 1985, skip lines 4a and 4b; go to line 5. | | Year _____<br>If born after 1985, skip lines 4a and 4b; go to line 5. | |
| **4 .** If the child was born before 1986— | | | | |
| **a** Was the child under age 24 at the end of 2004 and a student? | ☐ Yes.<br>Go to line 4. | ☐ No.<br>Continue | ☐ Yes.<br>Go to line 4. | ☐ No.<br>Continue |
| **b** Was the child permanently and totally disabled during any part of 2004? | ☐ Yes.<br>Continue | ☐ No.<br>The child is not a qualifying child. | ☐ Yes.<br>Continue | ☐ No.<br>The child is not a qualifying child. |
| **5** Child's relationship to you<br>(for example, son, daughter, grandchild, niece, nephew, foster child, etc.) | SON | | | |
| **6** Number of months child lived with you in the United States during 2004<br><br>● If the child lived with you for more than half of 2004 but less than 7 months, enter "7".<br>● If the child was born or died in 2004 and your home was the child's home for the entire time he or she was alive during 2004, enter "12". | 12 months<br>Do not enter more than 12 months. | | _____ months<br>Do not enter more than 12 months. | |

**TIP**   You may also be able to take additional child tax credit if your child (a) was under age 17 at the end of 2004, (b) is claimed as your dependent on line 6c of Form 1040A or Form 1040, and (c) is a U.S. citizen or resident alien. For more details, see the instructions for line 42 of Form 1040A or line 67 of Form 1040.

For Paperwork Reduction Act Notice, see Form 1040A or 1040 instructions.   QNA Copyright (c) 2004 TAXSLAYER   Schedule EIC (Form 1040A or 1040) 2004

**SCHEDULE C**
(Form 1040)

Department of the Treasury
Internal Revenue Service

**Profit or Loss From Business**
(Sole Proprietorship)

► Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.
► Attach to Form 1040 or Form 1041.   ► See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2004**

Name of proprietor: **WILLIAM H SIMMONS JR**

Social security number (SSN): 8498

A Principal business or profession, including product or service (see page C-2 of the instructions): **UNCLASSIFIED**

B Enter code from pages C-7, 8, 9 ► **999999**

C Business name. If no separate business name, leave blank: **FRANK REALTY**

D Employer ID number (EIN), if any ►

E Business address (including suite or room no.) ► 752 W FLAGLER
City, town or post office, state, and ZIP code ► MIAMI FL 33130

F Accounting method: (1) ☒ Cash  (2) ☐ Accrual  (3) ☐ Other (specify) ►

G Did you "materially participate" in the operation of this business during 2004? If "No," see page C-3 for limit on losses.  ☒ Yes  ☐ No

H If you started or acquired this business during 2004, check here ........................ ► ☐

**Part I  Income**

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here ► ☐ | 1 | 380 |
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | 380 |
| 4 | Cost of goods sold (from line 42 on page 2) | 4 | |
| 5 | Gross profit. Subtract line 4 from line 3 | 5 | 380 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3) | 6 | |
| 7 | Gross income. Add lines 5 and 6 ► | 7 | 380 |

**Part II  Expenses.** Enter expenses for business use of your home only on line 30.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | | 19 | Pension and profit-sharing plans | 19 |
| 9 | Car and truck expenses (see page C-3) | 9 | | 20 | Rent or lease (see page C-5): | |
| 10 | Commissions and fees | 10 | | a | Vehicles, machinery, and equipment | 20a |
| 11 | Contract labor (see page C-4) | 11 | | b | Other business property | 20b |
| 12 | Depletion | 12 | | 21 | Repairs and maintenance | 21 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | 13 | | 22 | Supplies (not included in Part III) | 22 |
| | | | | 23 | Taxes and licenses | 23 |
| | | | | 24 | Travel, meals, and entertainment: | |
| 14 | Employee benefit programs (other than on line 19) | 14 | | a | Travel | 24a |
| 15 | Insurance (other than health) | 15 | | b | Meals and entertainment | |
| 16 | Interest: | | | | | |
| a | Mortgage (paid to banks, etc.) | 16a | | c | Enter nondeductible amount included on line 24b | |
| b | Other | 16b | | d | Subtract line 24c from line 24b | 24d |
| 17 | Legal and professional services | 17 | | 25 | Utilities | 25 |
| | | | | 26 | Wages (less employment credits) | 26 |
| 18 | Office expense | 18 | | 27 | Other expenses (from line 48 on page 2) | 27 |
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns | | | | ► | 28 | |

| | | | |
|---|---|---|---|
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | 29 | 380 |
| 30 | Expenses for business use of your home. Attach Form 8829 | 30 | |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | 31 | 380 |

• If a profit, enter on Form 1040, line 12, and ALSO on Schedule SE, line 2 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.
• If a loss, you MUST go on to line 32.

32 If you have a loss, check the box that describes your investment in this activity (see page C-6).
• If you checked 32a, enter the loss on Form 1040, line 12, and ALSO on Schedule SE, line 2 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.
• If you checked 32b, you MUST attach Form 6198.

32a ☐ All investment is at risk.
32b ☐ Some investment is not at risk.

For Paperwork Reduction Act Notice, see Form 1040 instructions.

**Schedule C (Form 1040) 2004**

CNA Copyright (c) 2004 TAXSLAYER

uoꞁʇɔǝuuoɔ ǝꞁᴉɯᴉsɔɐɟ oN (ㄣ˙Ǝ   ʎsnꓭ (ᄅ˙Ǝ
ꞁᴉɐɟ ǝuᴉꞁ ɹo dn ƃuɐH
ɹoɹɹǝ
ɹǝʍsuɐ oN

6029-44239

62

53752

FILED 08 JUN -2 PH 3:36

IN THE CIRCUIT COURT FOR PALM BEACH
COUNTY, FLORIDA.  CIVIL DIVISION

CASE NO. 502008CA000752XXMBAW

WELLS FARGO BANK, N.A. AS TRUSTEE
FOR THE MLMI TRUST SERIES 2005- HE3,

       Plaintiff,

vs.

ANDREW STEVENS; AMY STEVENS;
WASHINGTON MUTUAL BANK, FA; GRAND
ISLES MASTER HOMEOWNERS ASSOCIATION,
INC.; UNKNOWN TENANT NO. 1; UNKNOWN
TENANT NO. 2; and ALL UNKNOWN PARTIES
CLAIMING INTERESTS BY, THROUGH, UNDER
OR AGAINST A NAMED DEFENDANT TO THIS
ACTION, OR HAVING OR CLAIMING TO HAVE
ANY RIGHT, TITLE OR INTEREST IN THE
PROPERTY HEREIN DESCRIBED,

       Defendants.

_____/

## AFFIDAVIT OF INDEBTEDNESS

STATE OF MINNESOTA      )
                          ) SS.
COUNTY OF DAKOTA       )

      BEFORE ME, the undersigned authority, personally appeared ___Rick Wilken___, who
after being first duly sworn on oath deposes and says:

      1.    I am ___Supervisor___ of Fidelity National Foreclosure Solutions, Inc., as authorized
agent for Wilshire Credit Corporation, servicing agent to Plaintiff, and  have personal knowledge of the
loan that is the subject of the above captioned suit.

      2.     This affidavit is based upon the loan payment records of the servicing agent and the
Affiant is familiar with these records.  These records are regularly maintained in the day to day course of
business, and it is the regular practice to make and maintain these records.  These records are compiled in a
computer data bank and are utilized as a matter of daily routine practice. The purpose of these records is to



monitor and maintain the account relating to a note and mortgage that are the subject matter of the pending case. These records properly reflect loan payments, charges and advances that are contemporaneously noted in the records at the time of the applicable transactions by persons whose regular duties include recording this information.

3.  Plaintiff now owns and holds the note described in the Plaintiff's Complaint dated May 4, 2005, in the current principal amount of $417,000.00.

4.  The payment of said note was secured by a mortgage now held by Plaintiff covering the following-described property situate in Palm Beach County, Florida, to-wit:

LOT 52 OF ORANGE POINT- REPLAT NO. 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 80, PAGE(S) 8 THRU 11, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA

5.  The payment due July 1, 2007 under the note and mortgage was not timely made and the note and mortgage are thereby in default.

6.  Plaintiff has elected, under the provisions of mortgage and note, to declare the entire balance as due and payable. The obligors under the mortgage and note were notified of the default and have not paid the sums of money due thereunder.

7.  The amounts due under the note and mortgage are set forth in Exhibit "A" attached hereto and shall continue to accrue interest at the amount set forth therein.

8.  The Plaintiff retained Smith, Hiatt & Diaz, P.A. to represent it in this matter and has agreed to pay a reasonable fee for said representation.

_____
Rick Wilken          Supervisor

Subscribed and sworn to (or affirmed) before me on
this 30 day of JAN., 2008,
by Rick Wilken
personally known to me or proved to me on the basis of satisfactory
evidence to be the person(s) who appeared before me.

Signature _____
Notary Public
My Commission Expires: _____

6029-44239



JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2009

# WCC Loan Judgment Figures

| | |
|---|---|
| **WCC Loan:** | 413654 |
| **Borrower:** | STEVENS, ANDREW |
| **Co-Borrower:** | STEVENS, AMY |
| **Property Address 1:** | 11248 EDGEWATER CIR |
| **Property Address 1:** | |
| **Property City:** | WELLINGTON |
| **Property State:** | FL |
| **Property Zip:** | 334148832 |
| **Property County:** | PALM BEACH |
| **Judgment Good Thru:** | 01/22/08 |
| **Next Due Date:** | 07/01/07 |
| **Last Paid Date:** | 06/11/07 |

| | | | | |
|---|---|---|---|---|
| **P&I Payment:** | $3,549.61 | **Pending P&I:** | | **Pending P&I Due:** |
| **Interest Rate:** | 9.5% | **Pending Rate:** | % | **Pending Rate Date:** |
| **Per Diem:** | $ 108.53 | **Pending Per Diem:** | | |

| | |
|---|---|
| **Unpaid Principal Balance:** | $417,000.00 |
| **Escrow Overdraft Balance:** | $8,087.94 |
| **Arrearage Balance:** | $ .00 |
| **Escrow Arrearage Balance:** | $ .00 |
| **Interest to Good Thru Date:** | $23,414.83 |
| **Total Unpaid Charges:** | $1,891.13 |

| | |
|---|---|
| **Less Suspense Credits:** | $ .00 |
| **Less Security Deposit Funds:** | $ .00 |
| **TOTAL DEBT to 01/22/08:** | $450,393.90 |
| **Borrower Funds in Escrow:** | $ .00 |

Loan Number 413654 continued...

## Charges Breakout:

| | |
|---|---|
| Late Charges: | $1,007.34 |
| Returned Check Charges: | $ .00 |
| Speedpay Charges: | $ .00 |
| Subordination Charges: | $ .00 |
| Assumption Charges: | $ .00 |
| Prepayment Penalties: | $ .00 |
| Legal/Attorney: | $ 700.00 |
| Bankruptcy: | $ .00 |
| Foreclosure: | $ .00 |
| Verification of Mortgage: | $ .00 |
| Taxes and Insurance: | $ .00 |
| Association Dues: | $ .00 |
| Title: | $ .00 |
| Escrow Advance Interest: | $ 72.79 |
| Property Preservation: | $ .00 |
| Property Inspections: | $ 11.00 |
| Field Calls: | $ .00 |
| Repair Inspections: | $ .00 |
| Valuations: | $ 100.00 |
| Short Payments: | $ .00 |
| Other: | $ .00 |
| Prior Servicer Returned Items: | $ .00 |

### Escrow Disbursement History if Overdraft Balance

**Escrow Overdraft Transferred from Prior Servicer:**       $   .00
**Date of Loan Transfer to Wilshire Credit Corporation:**

10/22/07        ZC STERLING HAZARD INS-WIRE                          $8,087.94

IN THE CIRCUIT COURT FOR PALM BEACH
COUNTY, FLORIDA. CIVIL DIVISION

CASE NO. 502008CA000752XXJXXMB(AW)

WELLS FARGO BANK, N.A. AS TRUSTEE
FOR THE MLMI TRUST SERIES 2005- HE3,

     Plaintiff,

vs.

ANDREW STEVENS; AMY STEVENS;
WASHINGTON MUTUAL BANK, FA; GRAND
ISLES MASTER HOMEOWNERS ASSOCIATION,
INC.; UNKNOWN TENANT NO. 1; UNKNOWN
TENANT NO. 2; and ALL UNKNOWN PARTIES
CLAIMING INTERESTS BY, THROUGH, UNDER
OR AGAINST A NAMED DEFENDANT TO THIS
ACTION, OR HAVING OR CLAIMING TO HAVE
ANY RIGHT, TITLE OR INTEREST IN THE
PROPERTY HEREIN DESCRIBED,

     Defendants.

_____/



## SUMMARY FINAL JUDGMENT
### OF FORECLOSURE

THIS ACTION came before the Court upon pleadings and proofs submitted herein, the motion of

the Plaintiff, for the entry of a Summary Final Judgment, and on the evidence presented,

IT IS ADJUDGED THAT:

    1.    This Court has jurisdiction of the subject matter hereof and the parties hereto. The

equities of this action are with the Plaintiff, WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE MLMI

TRUST SERIES 2005- HE3, There is due to the Plaintiff, the sums of money as hereafter set forth:

| | | |
|---|---|---:|
| A. | Principal Balance | $   417,000.00 |
| B. | 9.50% interest at $108.53 per diem from June 1, 2007 thru January 22 2008 | 23414.83 |
| C. | Interest from January 23 2008 thru July 1 2008 | 17473.33 |

1



CFN 20080262283, OR BK 22754 PG 35,RECORDED 07/14/2008 11:47:
Sharon R. Bock,CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 7

| | | |
|---|---|---:|
| D. | Advance for Insurance | 8087.94 |
| E. | Pre-Acceleration Late Charges | 1007.34 |
| F. | Escrow Advance/(Credit) | 72.79 |
| G. | Title Search | 350.00 |
| H. | Filing Fee | 265.60 |
| I. | Service of Process | 350.00 |
| J. | Corporate Search | 15.00 |
| K. | Attorneys' Fees | 1450.00 |
| | TOTAL                          $ | 469 486.83 |

2.     The Court finds, pursuant to <u>Florida Patient's Compensation Fund v. Rowe,</u> 472 So.2d 1145 (Fla. 1985), that the number of hours expended by Plaintiff's Counsel and the hourly rate charged are reasonable in light of the complexity of this cause, the result obtained, the degree of expertise necessary and the amount in controversy. The court finds, therefore, that the attorneys' fees awarded are reasonable under Florida law.

3.     The original promissory note having been presented and delivered to the Court, Count I of Plaintiff's Complaint is hereby deemed moot.

4.     A lien is held by the Plaintiff for the total sum specified in paragraph 1, plus interest, superior in dignity to any right, title, interest, or claim of the Defendants upon the mortgaged property herein foreclosed situate, lying and being in Palm Beach County, Florida, to-wit:

LOT 52 OF ORANGE POINT- REPLAT NO. 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 80, PAGE(S) 8 THRU 11, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA

5.     If the total sum due to the Plaintiff, plus interest on the unpaid principal at the rate prescribed in the note and mortgage to date, and at the current statutory interest rate of 11% per year after the date through which interest is calculated in paragraph 1 above, and all costs of this proceeding incurred

2

after the date of this Judgment are not forthwith paid, the Clerk of this Court shall sell that property at public sale at 10:00 a.m. on the 11th day of August, 2008, to the highest bidder or bidders for cash the Dining Room 1.2406, of the Palm Beach County Courthouse, 205 N. Dixie Highway, West Palm Beach FL 33401, after having first given notice as required by Section 45.031, Florida Statutes.

6.    Plaintiff shall advance the cost of publishing the Notice of Sale and shall be reimbursed by the Clerk out of the proceeds of the sale if the Plaintiff is not the purchaser of the property, but such reimbursement will not be by the Clerk unless the Affidavit of Post Judgment Advances has been filed.   The purchaser at the sale shall pay, in addition to the amount bid, the Clerk's fee, Clerk's registry fee and documentary stamps to be affixed to the Certificate of Title.

7.-    The Plaintiff may assign the Judgment or the bid to a third party without further order of the Court.

8.    If the Plaintiff or Plaintiff's assignee is the purchaser at the sale, the Clerk shall credit on the bid of the Plaintiff or Plaintiff's assignee the total sum herein found to be due the Plaintiff or such portion thereof as may be necessary to pay fully the bid of the Plaintiff or Plaintiff's assignee.

9.    On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale to Plaintiff c/o Smith, Hiatt & Diaz, P.A., PO BOX 11438, Fort Lauderdale, FL 33339-1438, so far as they are sufficient, by paying:

A.    All of Plaintiff's costs,

B.    Plaintiff's attorneys' fees,

**NO SOONER THAN
__4/0__ DAYS**

C.    The total sum due to Plaintiff as set forth above, less the items paid, with interest at the current statutory interest rate from the date through which interest is calculated in paragraph 1 above to the date of the sale.   If, subsequent to the date of the Plaintiff's Affidavit of Indebtedness and prior to the sale contemplated in paragraph 5 hereof, the Plaintiff has to advance money to protect its mortgage lien, including but not limited to post judgment advances for property taxes and insurance, property preservation

3

costs, post judgment attorney's fees and costs and post judgment bankruptcy attorney fees and costs, the Plaintiff or its Attorneys shall certify by affidavit to the Clerk and the amount due to Plaintiff shall be increased by the amount of such advances with further order of the Court.

        D.    The remaining proceeds, if any, shall be retained by the Clerk pending further Order of the Court.

        10.    If the United States of America is a Defendant in this action, they shall have the right of redemption provided by 28 U.S.C. §2410(c) from the issuance of a Certificate of Title, but the right shall thereafter expire.

        11.    Upon filing the Certificate of Sale, the Defendants and all persons claiming under or against them since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116.  **Any claim of a Defendant Homeowners Association, as defined under Florida Statute §720.301, are hereby foreclosed. If the Plaintiff is the successful purchaser of the property at foreclosure sale, the Plaintiff shall be governed by Florida Statute §720.3085(1) only, and shall not be jointly and severally liable with the previous owner of the property.**  Upon issuance of the Certificate of Title, the purchaser at the sale shall be let into possession of the property located at 11248 EDGEWATER CIR, WELLINGTON, FL 33414. The Clerk of the Court is hereby specifically authorized to issue a Writ of Possession for the property which is the subject matter of this action, and the Sheriff is hereby authorized to serve the Writ forthwith.

        12. IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

        13. IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN

CFN 20090392283 BOOK 23754 PAGE 3 L 4 OF 7

60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

14. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, OF PALM BEACH COUNTY WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

15. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE COUNTY LEGAL AID OFFICE OF FLORIDA RURAL LEGAL SERVICES, 1500 NW AVENUE "L" UNIT B, BELLE GLADE, FL 33430, PHONE: (888) 993-0003 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT PALM BEACH COUNTY AID SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

5

16.     The Court retains jurisdiction of this action to enter further orders as are proper including, without limitation, deficiency judgments.

**DONE AND ORDERED** in Chambers at the Palm Beach County Courthouse, West Palm Beach, Florida on _____ 7/1 _____ , 2008.

_____
Circuit Judge

Copies furnished:

Jose R. Florez, Esquire
SMITH, HIATT & DIAZ, P.A.
Attorneys for Plaintiff
PO BOX 11438
Fort Lauderdale, FL  33339-1438
Telephone: (954) 564-0071

All parties on the attached service list

6029-44239

6

**SERVICE LIST**
Case No. 502008CA000752XXMBAW

ANDREW STEVENS
11248 EDGEWATER CIR
WELLINGTON, FL 33414

AMY STEVENS
LAST KNOWN ADDRESS
11248 EDGEWATER CIR
WELLINGTON, FL 33414

WASHINGTON MUTUAL BANK, FA
2273 North Green Valley Parkway
Henderson, NV 89014

Mark Keegan, Esq.
Attorney For  GRAND ISLES MASTER
HOMEOWNERS ASSOCIATION, INC.
625 North Flagler Dr. 7th Floor
West Palm Beach, FL 33401

7

08-06252

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIVIL ACTION

WELLS FARGO BANK,

Plaintiff,

vs.                                                    CASE NO.: 502008CA013913XXXXMB(AW)
                                                       DIVISION: AW

LISA AURNHAMMER, et al,

Defendant(s).
_____/

## AFFIDAVIT AS TO AMOUNTS DUE AND OWING

STATE OF _____ NC _____

COUNTY OF _____ Wake, _____

BEFORE ME this day personally appeared _____ Henrietta Troy _____ who upon oath,

deposes on personal knowledge and says:

1.      This Affidavit is submitted in support of Plaintiff's Motion for Final Judgment for the

purpose of showing that there is in this action no genuine issue as to any material fact, and that Plaintiff is

entitled to a judgment as a matter of law.

2.      My name is Henrietta Troy _____, and I am the Foreclosure Specialist

of Wachovia Mortgage Corporation. Wachovia Mortgage Corporation is the owner or servicer for the owner of

the note and mortgage herein. Wachovia Mortgage Corporation is responsible for the collection of this loan

transaction and pursuit of any delinquency in payments. I am familiar with the books of account and have

examined all books, records, systems, and documents kept by Wachovia Mortgage Corporation concerning the

transactions alleged in the Complaint. All of these books, records, systems, and documents are kept by

Wachovia Mortgage Corporation in the regular course of its business as servicer of the loan transaction and are

made at or near the time by, and from information transmitted by, persons with personal knowledge of the facts

such as your affiant. It is the regular practice of Wachovia Mortgage Corporation to make and keep these

books, records, systems, and documents. The books, records, systems, and documents which Affiant has

examined are complete, accurate and correct. Furthermore, Affiant has personal knowledge of the matters

contained in the books, records, systems, and documents kept by Wachovia Mortgage Corporation.

EXHIBIT
D

3.    I have personal knowledge of the facts contained in this affidavit. Specifically, I have personal knowledge of the facts regarding the sums of money which are due and owing to Plaintiff pursuant to the Note and Mortgage which is the subject matter of the lawsuit.

4.    Plaintiff has advanced and is owed the following sums of money as of 5/28/2009:

| | |
|---|---:|
| PRINCIPAL | $176,000.00 |
| INTEREST<br>PER DIEM OF $28.33<br>(5.875% interest rate) | 14,551.60 |
| PRE-ACCELERATION LATE CHARGES<br>THROUGH May 8, 2008 | 129.24 |
| PROPERTY INSPECTIONS | 35.00 |
| PRO-RATA MIP | 0.00 |
| MIP/PMI | 0.00 |
| TAXES | 1,853.77 |
| INSURANCE | 0.00 |
| RECORDING FEE | 10.00 |
| OVERNIGHT CHARGES | 0.00 |
| OTHER (specify): | |
| TOTAL | $192,579.61 |

08-06252

5.      Wachovia Mortgage Corporation has employed the services of the law firm of Albertelli

Law in this action against the Defendant(s), and is obligated to pay Albertelli Law a reasonable attorney's fee

for its services, along with all costs and expenses of this action.  In this uncontested foreclosure case, we have

agreed to pay the law firm of Albertelli Law a flat fee of $1,200.00.  In the event the matter becomes

contested, we have agreed to pay an hourly fee up to $150.00 per hour.

FURTHER AFFIANT SAYETH NOT.

Type Name Here:    Henrietta Troy

Wachovia Mortgage Corporation

The foregoing instrument was sworn to and subscribed before me this 23rd day of

April, 2009, by   Henrietta Troy  , who is personally known to me.

NOTARY PUBLIC, State of    NC,

My commission expires: _____

- 08-06252



OFFICIAL SEAL
THERESA MORGAN WALSER
NOTARY PUBLIC-NORTH CAROLINA
COUNTY OF JOHNSTON
My Commission Expires October 17, 2010

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIVIL ACTION

**WELLS FARGO BANK,**

    **Plaintiff,**

vs.

                                          CASE NO.: 502008CA013913XXXXMB(AW)
                                          DIVISION: AW

**LISA AURNHAMMER, et al,**

    **Defendant(s).**

_____/

## NOTICE OF FILING

    Plaintiff, Wells Fargo Bank, gives Notice of Filing of EXECUTED AFFIDAVIT AS TO AMOUNTS DUE

AND OWING, GOOD THROUGH 5/28/2009.

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by the U.S. Mail this

\_\_\_\_\_ day of May, 2009, to all parties on the attached service list.

                                      Albertelli Law
                                      P.O. Box 23028
                                      Tampa, FL  33623
                                      (813)221-4743

                                      By: _____
                                            Brian Robert Alvarez, Esq.
                                          Florida Bar No. 43181

LJM - 08-06252

## Service List

Lisa Aurnhammer a/k/a Lisa E. Aurnhammer
245 Murcia Drive, Apt. 210
Jupiter, Fl. 33458-2746

Abacoa Property Owners Assembly, Inc.
Gary D. Fields
4400 PGA Blvd., Suite 900, Palm Beach Gardens, Fl. 33410

John Aurnhammer
245 Murcia Drive, Apt. 210
Jupiter, Fl. 33458-2746

Mortgage Electronic Registration Systems, Inc., as nominee for Southtrust Mortgage
Corporation
c/o Registered Agent
Electronic Data Systems Corporation
3300 SW 34th Avenue, Suite 101, Ocala, Fl. 34474

Somerset at Abacoa Condominium Association, Inc.
c/o Gary D. Fields, Esq.
Admiralty Tower – Suite 900
4400 PGA Boulevard
Palm Beach Gardens, FL 33410

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA
CIVIL ACTION

WELLS FARGO BANK,

Plaintiff,

CASE NO.:
502008CA013913XXXXMB(AW)
vs.                      DIVISION:

SPACE FOR RECORDING
ONLY F.S.§695.26

LISA AURNHAMMER A/K/A LISA E.
AURNHAMMER; THE UNKNOWN SPOUSE OF LISA
AURNHAMMER A/K/A LISA E. AURNHAMMER;
ABACOA PROPERTY OWNERS ASSEMBLY,
INC.;JOHN AURNHAMMER;MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR SOUTHTRUST MORTGAGE
CORPORATION;SOMERSET AT ABACOA
CONDOMINIUM ASSOCIATION, INC.; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY, THROUGH,
UNDER, AND AGAINST THE HEREIN NAMED
INDIVIDUAL DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE, WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES, GRANTEES, OR
OTHER CLAIMANTS; TENANT #1, TENANT #2,
TENANT #3, and TENANT #4 the names being fictitious
to account for parties in possession



Defendant(s).

_____/

## FINAL SUMMARY JUDGMENT OF MORTGAGE FORECLOSURE

THIS CAUSE having come to be heard on June 1, 2009 on the Motion for Summary Judgment of

Mortgage Foreclosure Including a Hearing to Tax Attorneys' Fees and Costs filed on behalf of Wells Fargo

Bank, hereinafter referred to as Plaintiff, and the Court having reviewed the pleadings and affidavits filed

by Plaintiff, having heard argument of counsel, and being otherwise fully advised in the premises:

ORDERS AND ADJUDGES as follows:

1.     Service of process has been duly and regularly obtained over Lisa Aurnhammer a/k/a

Lisa E. Aurnhammer; Abacoa Property Owners Assembly, Inc.; John Aurnhammer; Mortgage Electronic



Registration Systems, Inc., as nominee for Southtrust Mortgage Corporation; Somerset at Abacoa

Condominium Association, Inc.; Any And All Unknown Parties Claiming by, Through, Under, And

Against The Herein named Individual Defendant(s) Who are not Known To Be Dead Or Alive, Whether

Said Unknown Parties May Claim An Interest in Spouses, Heirs, Devisees, Grantees, Or Other Claimants;

hereinafter referred to as "Defendants."

2.      The equities of this action are in favor of Plaintiff, and Plaintiff is entitled to the foreclosure

of its mortgage.  Plaintiff is due:

| | |
|---|---:|
| UNPAID PRINCIPAL BALANCE | $176,000.00 |
| INTEREST THROUGH June 1, 2009 | 14,693.25 |
| PRE-ACCELERATED LATE CHARGES | 129.24 |
|     THROUGH May 8, 2008 | |
| PROPERTY INSPECTIONS | 35.00 |
| TAXES | 1,853.77 |
| RECORDING FEE | 10.00 |
| TITLE SEARCH EXPENSES | 175.00 |
| TITLE EXAMINATION FEE | 150.00 |
| FILING FEE | 273.60 |
| INVESTIGATION/SERVICE OF PROCESS | 1,315.00 |
| NOTICE OF ACTION PUBLICATION | 150.00 |
| ATTORNEY'S FEE | 1,200.00 |
| **TOTAL** | **$195,984.86** |

3.      The Court finds, based upon §702.065(2) Florida Statutes, the affidavits filed herein,

inquiry of counsel for Plaintiff, and upon consideration of the legal services rendered, the complexity of the

foreclosure action, the amount of time and labor reasonably expended by lawyers in the community in

prosecuting routine mortgage foreclosure actions, Albertelli Law's flat fee agreement with its client and

Florida law, that the flat fee sought by Albertelli Law is reasonable and awards a flat fee of One Thousand

Two Hundred And 00/100 Dollars  ($1,200.00).

4.      The Court finds that the Plaintiff is the owner of the Note(s) and Mortgage(s) being

foreclosed in this matter.

5.      Plaintiff  holds a lien for the total sums set forth in Paragraph 2 superior to any claims,

interests or estates of Defendant(s) over Lisa Aurnhammer a/k/a Lisa E. Aurnhammer; Abacoa Property

Owners Assembly, Inc.; John Aurnhammer; Mortgage Electronic Registration Systems, Inc., as nominee

for Southtrust Mortgage Corporation; Somerset at Abacoa Condominium Association, Inc.; Any And All

Unknown Parties Claiming by, Through, Under, And Against The Herein named Individual Defendant(s)

Who are not Known To Be Dead Or Alive, Whether Said Unknown Parties May Claim An Interest in Spouses, Heirs, Devisees, Grantees, Or Other Claimants; and any person or entities claiming by, through, under or against these defendant(s), excepting however, any rights bestowed to any of the herein Defendants pursuant to Florida Statutes §718 and §720, and/or any special assessments that are superior pursuant to Florida Statutes §159 and/or §170.9, on the following-described property located and situated in Palm Beach County, Florida:

> UNIT 12-210, SOMERSET AT ABACOA, A CONDOMINIUM, TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 16257, AT PAGE 296, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, TOGETHER WITH ANY AMENDMENTS THERETO.
> A/K/A 245 MURCIA DRIVE # 12-210, JUPITER, FL 33458

6.     If the total sum set forth in Paragraph 2, with interest at the rate prescribed by law (which is 8 percent per annum) and all costs of this action accruing subsequent to this Judgment, is not paid immediately, the Clerk of this Court shall sell the property described in Paragraph 5 at a public sale on _July 2_, 20 09, at 10:00AM EST, to the highest bidder for cash, except as hereinafter set forth, in/on the dining room of the Main Courthouse (Room 1.2406), located on the first floor, 205 N. Dixie Highway, West Palm Beach, Florida 33401, in Palm Beach County, Florida in accordance with Florida Statute §45.031(1999), provided, however, that such sale shall not be held in the absence of Plaintiff's attorney or its representative.

7.     Plaintiff shall advance all subsequent costs of this action in addition to any advances made to preserve its collateral and shall be reimbursed, without further Order of the Court, by the Clerk if Plaintiff is not the purchaser of the property. If Plaintiff is the purchaser, the bid may be assigned without further Order of this Court and the Clerk shall credit the Plaintiff's bid with the total sum set forth in Paragraph 2 above, together with interest as prescribed by law and costs accruing subsequent to this judgment as is necessary to pay the bid in full.

8.     On filing the Certificate of Title with respect to the property described in Paragraph 5, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the Certificate if Plaintiff is the successful bidder; third, Plaintiff's attorney's fees; fourth, the total sum due to Plaintiff, as set forth in Paragraph 2, less the items paid,

plus interest at the rate prescribed by law from this date to the date of the sale to Plaintiff. THE CLERK SHALL RETAIN ANY AMOUNT REMAINING PENDING THE FURTHER ORDER OF THIS COURT.   ANY AMOUNTS SO RETAINED ARE TO BE DISTRIBUTED TO EACH DEFENDANT, AS DETERMINED BY ORDER OF THIS COURT. THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.  IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.  IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.  YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE PALM BEACH COUNTY CLERK OF COURT, ATTN: FORECLOSURE, MAIN COURTHOUSE, 205  NORTH DIXIE HIGHWAY, ROOM 3.2300, WEST PALM BEACH, FL  33401; TELEPHONE 561-355-2986,  WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.   IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC. AT (561) 655-8944 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO

LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC. FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

9.      The successful bidder and purchaser at the foreclosure sale of the real property being foreclosed shall pay, in addition to the amount bid, any documentary stamps and Clerk's fee relating to the issuance of the Certificate of Title to be issued by the Clerk to the successful bidder and purchaser.  At the time of the sale the successful high bidder shall post with the Clerk a deposit equal to five percent (5%) of the final bid.  The deposit shall be applied to the sale price at the time of payment.  If final payment is not made within the prescribed period, the Clerk shall re-advertise the sale as provided in this section, and pay all costs of the sale from the deposit.  Any remaining funds shall be applied toward the Judgment.  All funds disbursed to Plaintiff representing proceeds of the sale shall be made payable to Albertelli Law.

10.      Defendants' Right of Redemption shall be terminated upon issuance of the Certificate of Sale as prescribed by Florida Statute §45.0315 Florida Statutes.  On filing the Certificate of Title with respect to the property described in Paragraph 5 above, the Defendants named herein, and all persons claiming by, through, under or against them since the filing of Notice of Lis Pendens in this action, are foreclosed of all estate, interest or claim in the property described in Paragraph 5, and the purchaser or purchasers at the sale shall be let into possession of the property. The Clerk of the Circuit Court is ordered to issue a Writ of Possession upon demand by the purchaser or purchasers.

11.      Jurisdiction over this action is retained to enter such further Orders to give Plaintiff adequate and complete relief as may be necessary and proper, including the entry of a deficiency decree if borrower(s) has not been discharged in bankruptcy or constructively served, together with additional attorney's fees, if appropriate.

DONE AND ORDERED in Chambers, in Palm Beach County, Florida, this _____1_____ day of __June__, 2009.

Circuit Judge EDWARD A. GARRISON

Copies furnished to:
Albertelli Law
P.O. Box 23028
Tampa, FL 33623
08-06252

Lisa Aurnhammer a/k/a Lisa E. Aurnhammer
245 Murcia Drive, Apt. 210
Jupiter, FL 33458-2746

Abacoa Property Owners Assembly, Inc.
Gary D. Fields
4400 PGA Blvd., Suite 900, Palm Beach Gardens, FL 33410

John Aurnhammer
245 Murcia Drive, Apt. 210
Jupiter, FL 33458-2746

Mortgage Electronic Registration Systems, Inc., as nominee for Southtrust Mortgage Corporation
c/o Registered Agent
Electronic Data Systems Corporation
3300 SW 34th Avenue, Suite 101, Ocala, FL 34474

Somerset at Abacoa Condominium Association, Inc.
c/o Gary D. Fields, Esq.
Admiralty Tower - Suite 900
4400 PGA Boulevard
Palm Beach Gardens, FL 33410

6052A - 44333
N

SS 54   64

IN THE CIRCUIT COURT FOR PALM BEACH
COUNTY, FLORIDA. CIVIL DIVISION

CASE NO. 502008CA001525XXMBAW

WELLS FARGO BANK, N.A. AS TRUSTEE
FOR THE MLMI TRUST SERIES 2005-HE2,

      Plaintiff,

vs.

RENE E. NOVOA; OLGA NOVOA; ET AL.,

      Defendants.

_____/

## AFFIDAVIT OF INDEBTEDNESS

STATE OF MINNESOTA    )
                    ) SS.
COUNTY OF DAKOTA     )

    BEFORE ME, the undersigned authority, personally appeared _____Laura Hescott_____, who after being first duly sworn on oath deposes and says:

    1.    I am _____Supervisor_____ of Fidelity National Foreclosure Solutions, Inc., as authorized agent for Wilshire Credit Corporation, servicing agent to Plaintiff, and have personal knowledge of the loan that is the subject of the above captioned suit.

    2.    This affidavit is based upon the loan payment records of the servicing agent and the Affiant is familiar with these records. These records are regularly maintained in the day to day course of business, and it is the regular practice to make and maintain these records. These records are compiled in a computer data bank and are utilized as a matter of daily routine practice. The purpose of these records is to monitor and maintain the account relating to a note and mortgage that are the subject matter of the pending case. These records properly reflect loan payments, charges and advances that are contemporaneously noted in the records at the time of the applicable transactions by persons whose regular duties include recording this information.

    3.    Plaintiff now owns and holds the note described in the Plaintiff's Complaint dated May 26, 2005, in the current principal amount of $250,059.93.

    4.    The payment of said note was secured by a mortgage now held by Plaintiff covering the following-described property situate in Palm Beach County, Florida, to-wit:

LOT 202, PLAT I, LONE PINE ESTATES, ACCORDING TO THE PLAT THEREOF, AS



EXHIBIT
F

RECORDED IN PLAT BOOK 33, PAGE 33, OF THE PUBLIC RECORDS OF PALM BEACH

COUNTY, FLORIDA.

5.      The payment due September 1, 2007 under the note and mortgage was not timely made and the
note and mortgage are thereby in default.

6.      Plaintiff has elected, under the provisions of mortgage and note, to declare the entire balance as
due and payable.  The obligors under the mortgage and note were notified of the default and have not paid the sums
of money due thereunder.

7.      The amounts due under the  note and mortgage are set forth in Exhibit "A" attached hereto and
shall continue to accrue interest at the amount set forth therein.

8.      The Plaintiff retained Smith, Hiatt & Diaz, P.A. to represent it in this matter and has agreed to pay
a reasonable fee for said representation.

_____
      Laura Hescott      Supervisor

· Subscribed and sworn to (or affirmed) before me on
this ___ day of _____, 2008,
by _____Laura Hescott_____
personally known to me or proved to me on the basis of satisfactory
evidence to be the person(s) who appeared before me.

Signature _____
Notary Public
My Commission Expires: _____

6029-44333

Matthew Allan Banaszewski
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2011

IN THE CIRCUIT COURT FOR PALM BEACH
COUNTY, FLORIDA. CIVIL DIVISION

CASE NO. 502008CA001525XXMBAW

WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE
MLMI TRUST SERIES 2005-HE2,

      Plaintiff,

vs.

RENE E. NOVOA; OLGA NOVOA; LONE PINE
ESTATES HOMEOWNERS' ASSOCIATION, INC.;
UNKNOWN TENANT NO. 1; UNKNOWN TENANT
NO. 2; and ALL UNKNOWN PARTIES CLAIMING
INTERESTS BY, THROUGH, UNDER OR AGAINST A
NAMED DEFENDANT TO THIS ACTION, OR
HAVING OR CLAIMING TO HAVE ANY RIGHT,
TITLE OR INTEREST IN THE PROPERTY HEREIN
DESCRIBED,

      Defendants.
_____/



## SUMMARY FINAL JUDGMENT
## OF FORECLOSURE

    THIS ACTION came before the Court upon pleadings and proofs submitted herein, the motion of the Plaintiff, for the entry of a Summary Final Judgment, and on the evidence presented,

    IT IS ADJUDGED THAT:

      1.    This Court has jurisdiction of the subject matter hereof and the parties hereto. The equities of this action are with the Plaintiff, WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2005-HE2. There is due to the Plaintiff, the sums of money as hereafter set forth:

| | | | |
|---|---|---|---:|
| A. | Principal Balance | $ | 250,059.93 |
| .B. | 11.70% Interest at $80.16 per diem from August 1, 2007 thru February 8, 2008 | | 15,435.89 |
| C. | Interest from February 9, 2008 to September 16, 2008 | | 17,715.36 |
| D. | Advance for Insurance | | 5,395.80 |
| E. | Pre-Acceleration Late Charges | | 100.00 |
| F. | Property Inspection | | 52.00 |

1

CFN 20080357419, OR BK 22880 PG 481,RECORDED 09/29/2008 12:
Sharon R. Bock,CLERK & COMPTROLLER, Palm Beach County, NUM


EXHIBIT
G

| | | |
|---|---|---|
| G. | Title Search | 350.00 |
| H. | Filing Fee | 261.60 |
| I. | Service of Process | 520.30 |
| J. | Corporate Search | 15.00 |
| K. | Property Inspections | 109.00 |
| L. | Attorneys' Fees | 1,770.00 |
| | TOTAL | $ 291,784,.88 |

2.   The Court finds, pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), that the number of hours expended by Plaintiff's Counsel and the hourly rate charged are reasonable in light of the complexity of this cause, the result obtained, the degree of expertise necessary and the amount in controversy. The court finds, therefore, that the attorneys' fees awarded are reasonable under Florida law.

3.   The original promissory note having been presented and delivered to the Court, Count I of Plaintiff's Complaint is hereby deemed moot.

4.   A lien is held by the Plaintiff for the total sum specified in paragraph 1, plus interest, superior in dignity to any right, title, interest, or claim of the Defendants upon the mortgaged property herein foreclosed situate, lying and being in Palm Beach County, Florida, to-wit:

LOT 202, PLAT I, LONE PINE ESTATES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 33, PAGE 33, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

5.   If the total sum due to the Plaintiff, plus interest on the unpaid principal at the rate prescribed in the note and mortgage to date, and at the current statutory interest rate of 11% per year after the date through which interest is calculated in paragraph 1 above, and all costs of this proceeding incurred after the date of this Judgment are not forthwith paid, the Clerk of this Court shall sell that property at public sale at 10:00 a.m. on the _30th_ day of _OcToBeR_, 2008, to the highest bidder or bidders for cash the Dining Room 1.2406, of the Palm Beach County Courthouse, 205 N. Dixie Highway, West Palm Beach FL 33401, after having first given notice as required by Section 45.031, Florida Statutes.

2

6.     Plaintiff shall advance the cost of publishing the Notice of Sale and shall be reimbursed by the Clerk out of the proceeds of the sale if the Plaintiff is not the purchaser of the property, but such reimbursement will not be by the Clerk unless the Affidavit of Post Judgment Advances has been filed.   The purchaser at the sale shall pay, in addition to the amount bid, the Clerk's fee, Clerk's registry fee and documentary stamps to be affixed to the Certificate of Title.

7.     The Plaintiff may assign the Judgment or the bid to a third party without further order of the Court.

8.     If the Plaintiff or Plaintiff's assignee is the purchaser at the sale, the Clerk shall credit on the bid of the Plaintiff or Plaintiff's assignee the total sum herein found to be due the Plaintiff or such portion thereof as may be necessary to pay fully the bid of the Plaintiff or Plaintiff's assignee.

9.     On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale to Plaintiff c/o Smith, Hiatt & Diaz, P.A., PO BOX 11438, Fort Lauderdale, FL  33339-1438, so far as they are sufficient, by paying:

A.     All of Plaintiff's costs,

B.     Plaintiff's attorneys' fees,

C.     The total sum due to Plaintiff as set forth above, less the items paid, with interest at the current statutory interest rate from the date through which interest is calculated in paragraph 1 above to the date of the sale.   If, subsequent to the date of the Plaintiff's Affidavit of Indebtedness and prior to the sale contemplated in paragraph 5 hereof, the Plaintiff has to advance money to protect its mortgage lien, including but not limited to post judgment advances for property taxes and insurance, property preservation costs, post judgment attorney's fees and costs and post judgment bankruptcy attorney fees and costs, the Plaintiff or its Attorneys shall certify by affidavit to the Clerk and the amount due to Plaintiff shall be increased by the amount of such advances without further order of the Court.

D.     The remaining proceeds, if any, shall be retained by the Clerk pending further Order of the Court.

10.     If the United States of America is a Defendant in this action, they shall have the

3

right of redemption provided by 28 U.S.C. §2410(c) from the issuance of a Certificate of Title, but the right shall thereafter expire.

11.     Upon filing the Certificate of Sale, the Defendants and all persons claiming under or against them since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116. Any claim of a Defendant Homeowner Association, as defined under Florida Statute §720.301, is hereby foreclosed.  Any successful purchaser of the property at foreclosure sale shall not be jointly and severally liable with the previous owner of the property for assessments that came due prior to the transfer of title, nor liable for any part or percentage thereof.

Upon issuance of the Certificate of Title, the purchaser at the sale shall be let into possession of the property located at 106 CHAMPIONS RUN, RIVIERA BEACH, FL 33407.The Clerk of the Court is hereby specifically authorized to issue a Writ of Possession for the property which is the subject matter of this action, and the Sheriff is hereby authorized to serve the Writ forthwith.

12.  IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

13. IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

14.  IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.   YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED.  PLEASE CHECK WITH THE CLERK OF THE COURT, OF PALM BEACH COUNTY WITHIN TEN (10) DAYS AFTER

4

THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

15. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE COUNTY LEGAL AID OFFICE OF FLORIDA RURAL LEGAL SERVICES, 1500 NW AVENUE "L" UNIT B, BELLE GLADE, FL 33430, PHONE: (888) 993-0003 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT PALM BEACH COUNTY AID SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

16. The Court retains jurisdiction of this action to enter further orders as are proper including, without limitation, deficiency judgments.

DONE AND ORDERED in Chambers at the Palm Beach County Courthouse, West Palm Beach, Florida on _____9/16_____, 2008.

_____
Circuit Judge

Copies furnished:
Michael D. Wild, Esquire
SMITH, HIATT & DIAZ, P.A.
Attorneys for Plaintiff
PO BOX 11438
Fort Lauderdale, FL  33339-1438
Telephone: (954) 564-0071
All parties on the attached service list
6029-44333

5

**SERVICE LIST**
Case No. 502008CA001525XXMBAW

Robert Feldman, Esq.
Attorney For RENE E. NOVOA
55 N.E. 5th Ave., Ste. 500
Boca Raton, FL 33432

Robert Feldman, Esq.
Attorney For OLGA NOVOA
55 N.E. 5th Ave., Ste. 500
Boca Raton, FL 33432

Michael J. Posner, Esq.
Attorney For LONE PINE ESTATES HOMEOWNERS' ASSOCIATION, INC.
4420 Beacon Circle
WEST PALM BEACH, FL 33407